**Application of Eugene BURWELL, For a Writ of Habeas Corpus.**

**Application of James A. ROGERS, For a Writ of Habeas Corpus.**

**Misc. Nos. 461, 462.**

United States Court of Appeals
Ninth Circuit.

Aug. 6, 1956.

POPE, Circuit Judge.

Burwell and Rogers have each presented petitions for certificate of probable cause pursuant to Title 28 U.S.C.A. § 2253, to permit them to appeal from an order of the District Court for the Northern District of California, Southern Division, denying their separate petitions for writs of habeas corpus. Both petitioners were convicted of first degree murder in a California Superior Court and sentenced to death. Upon their automatic appeals to the Supreme Court of California the judgments were affirmed. People v. Burwell, 44 Cal.2d 16, 279 P.2d 744. Certiorari to review that decision was denied by the United States Supreme Court. 349 U.S. 936, 75 S.Ct. 788, 99 L.Ed. 1265.

In May, 1955, when they made their applications for writs of habeas corpus, petitioners obtained from the district court a stay of execution for a period of time sufficient to permit the district court to hear such applications. After an extended hearing, that court denied the petitions for writs of habeas corpus and denied certificates of probable cause. They then sought certificates of probable cause from this court which denied them because the petitions were addressed to the court rather than to an individual.

judge of the court, the court holding that it had no power, as a court to grant such a certificate. Application of Burwell, 9 Cir., 226 F.2d 309; Application of Rogers, 9 Cir., 229 F.2d 754. The Supreme Court granted certiorari and reversed that ruling, and remanded the cases to permit the applications to be heard on their merits. Burwell v. Teets, 350 U.S. 808, 76 S.Ct. 98; Rogers v. Teets, 350 U.S. 809, 76 S.Ct. 98.

An effort by the same division of this court to get the Supreme Court to change its ruling by issuing a certificate to that court was rejected. In re Burwell, 350 U.S. 521, 76 S.Ct. 539, 540. In dismissing the certificate the Supreme Court stated: "It is for the Court of Appeals to determine whether such an application to the court is to be considered by a panel of the Court of Appeals, by one of its judges, or in some other way deemed appropriate by the Court of Appeals within the scope of its powers." Thereafter the court adopted a rule whereby the Clerk of the court was authorized to transmit such petitions to an individual judge. Pursuant to that rule these petitions have come into my hands for action.

After an extended examination of the very voluminous record which was before the district court and which formed the basis for its action, I am frank to say that if I were a member of a division of this court hearing these actions on appeal, I would find no clear reason to reverse the judgments denying habeas corpus if I then had before me no more than what has now been presented with these applications.

Each of these petitioners alleges in his application for habeas corpus several grounds for claim of denial of constitutional rights in the course of his trial. All of such grounds were urged in the state courts. Each court considered them with great care taking evidence in respect to these claims wherever that was appropriate. In every case the trial court and the Supreme Court of the State of California found the facts against the petitioners. There was nothing perfunctory about the manner in which the California courts dealt with the various claims of denial of constitutional right made by these petitioners. The proceedings in the state courts fully measure up to what Mr. Justice Frankfurter for the Court described in Brown v. Allen, 344 U.S. 443, 504, 73 S.Ct. 397, 445, 97 L.Ed 469, as follows: "In some cases the State court has held a hearing and rendered a decision based on specific findings of fact; there may have been review by a higher State court which had before it the pleadings, the testimony, opinions and briefs on appeal. It certainly would make only for burdensome and useless repetition of effort if the federal courts were to rehear the facts in such cases." I am unable to find any "vital flaw" in the processes of ascertaining the facts and the law in the state courts.

The entire record of the state court proceedings was before the district court. This included some 18 volumes of the transcript of the petitioners' trial, (they were tried together), and included all of the briefs and papers filed in the California Supreme Court. Under such circumstances it would be hard for me to perceive why this would not be a case where, in the language of Mr. Justice Frankfurter, in Brown v. Allen, supra, 344 U.S. at page 506, 73 S.Ct. at page 446: " * * * the District Judge may accept their [the state court] determination in the State proceeding and deny the application." As Mr. Justice Reed put it in the same case, 344 U.S. at page 463, 73 S.Ct. at page 410: "Applications to district courts on grounds determined adversely to the applicant by state courts should follow the same principle—a refusal of the writ without more, if the court is satisfied, by the record, that the state process has given fair consideration to the issues and the offered evidence, and has resulted in a satisfactory conclusion. Where the record of the application affords an adequate opportunity to weigh the sufficiency of the allegations and the evidence,

and no unusual circumstances calling for a hearing are presented a repetition of the trial is not required."

But what I am now called upon to decide is not the disposition I would make of this case on the basis of the record now before me if I were sitting upon a final appeal. What I am now called upon to say is whether in my judgment the proposed appeal presents a question or questions of sufficient substance so that these petitioners ought to be given an opportunity to argue their cases before a division of this court.

Burwell has urged several alleged denials of his constitutional rights.[1] It seems to me that his claim with respect to certain oral confessions which were taken immediately after the homicides and which he says were coerced and involuntary, is at least something he should be permitted to argue upon appeal. These petitioners were at the time of the homicides inmates of California State Prison at San Quentin. At their trial upon the murder charges it was shown that in attempting to escape from the prison, Burwell and Rogers killed two guards and attacked and seriously injured and mangled two others. There was substantial evidence of the killings and of their participation therein sufficient to warrant a conviction wholly apart from the confessions which were obtained from Burwell immediately after he was apprehended following his unsuccessful effort to escape.

These men were apprehended while they were in a projection booth located in a prison yard. They had carried weapons concealed in their clothing into the booth. Their clothing was heavily covered with blood. In the prison yard between the projection booth and the office of the captain of the guards to which the prisoners were taken after their capture, there were some 250 other inmates where a basketball game had been in progress. It was necessary to take the two men from the place where they were apprehended to the office of the captain and to march them in the vicinity of the area where the other inmates were located. Burwell and Rogers were ordered to take off all their clothing; they were then marched naked across this yard to the captain's office. On the way Burwell lagged and looked behind; he was told to move faster and replied he was in no hurry whereupon a guard twisted his arm and another struck him across the back and buttocks to speed him along. He had suffered a knife wound in his back at the time he had attacked one of the men he had killed or injured. When the men reached the captain's office, the oral statements in question were taken from them, and these were introduced at the trial as confessions. There was no evidence of any physical or other compulsion after the men reached the captain's office. While there Burwell's wound reopened and this caused a coughing spell while he was being questioned. He was given immediate medical attention and not questioned further until the following morning.

[1]. These included: 1, Wrongful admission of evidence of oral confessions taken immediately after the homicides since they were coerced and involuntary in violation of rights under the Fourteenth Amendment.

2, That Burwell's demeanor and ability to concentrate were substantially impaired during his trial by virtue of having been intimidated and harassed at gunpoint while testifying in his own behalf, in violation of the Fifth and Fourteenth Amendments.

3, Abuse of discretion in denying change of venue and then allowing the jurors to commingle with the hostile audience so as to deprive the defendant of a fair and impartial trial in violation of rights under the Sixth and Fourteenth Amendments.

4, Flagrant misconduct of prosecutors prevented a fair trial guaranteed by the Fourteenth Amendment.

5, Indictment was returned by grand jury from which members of Burwell's race were intentionally excluded in violation of rights under Fourteenth Amendment.

6, All of the foregoing working together had a prejudicial effect precluding a fair trial as so guaranteed by the Constitution.

At the trial objections were made to the receipt of these confessions on the ground that they were coerced. The question of whether the confessions were voluntary was submitted to the jury under appropriate instructions which measured up to the standards for such instructions approved in the case of Stein v. New York, 346 U.S. 156, 73 S. Ct. 1077, 97 L.Ed. 1522. That the jury took the instructions seriously is indicated by the fact that after deliberating for some time, the jury returned to the courtroom and had the court again read the instructions on confessions. The instructions were, it seems to me, wholly adequate, clearly worded and as favorable to the defendants as could possibly be desired. Burwell argues that he should have been allowed to introduce evidence in the federal district court to show that because of his weakened condition and the circumstances under which he was hustled across the courtyard, his confession given immediately thereafter was not voluntary. The California Supreme Court said in this connection, 279 P.2d 752: "It was the duty of the guards to take the defendants across the yard without delay. It is difficult for a court to say how much force was necessary. Under the circumstances here disclosed it may not be said that more force was used than was necessary. A display of force in effecting an arrest has been held not to affect a confession subsequently made. [Cases omitted.] There is no evidence of undue discomfort suffered by the defendants on their way to the captain's office and no evidence of threats, or duress, after they arrived there."

There was no evidence that any of the things done to Burwell were done for the purpose of extracting a confession. But for the purpose of making my present ruling, I assume that even although the persons arresting an accused person may in a given case have used no more force than necessary to accomplish the arrest, yet the force used in the circumstances may nevertheless have been such as to destroy the voluntary character of a confession. It is not necessarily an answer to a claim of a coerced confession to say that no more force was used than was necessary. In a given case it might be necessary for the arresting officers to subdue a prisoner by force which would leave the prisoner half conscious; and a confession then taken might well lack voluntariness.

I realize that it was the Supreme Court of California which used this quoted language and that after all it was the jury which rendered a verdict consistent with a finding that the confessions were altogether voluntary. But especially in respect to Burwell, the circumstances here might well throw his claim into Mr. Justice Frankfurter's fifth category discussed in Brown v. Allen, supra, 344 U.S. at page 507, 73 S.Ct. at page 446, because his claim may call for interpretation of the legal significance of a large number of facts where the historical facts alone do not dispose of the claim. In such a case, says the opinion, "the District Judge *must* exercise his own judgment on this blend of facts and their legal values." (Emphasis supplied.)

To illustrate the type of case he was referring to, Mr. Justice Frankfurter alluded to his concurring opinion in Haley v. Ohio, 332 U.S. 596, 601, 68 S.Ct. 302, 306, 92 L.Ed. 224, in which it was stated that the answer as to whether a confession was voluntary "depends on an evaluation of psychological factors". Recently we had occasion to make reference to a problem of that kind in our decision in Cranor v. Gonzalez, 9 Cir., 226 F.2d 83, 87, 88. I am not presently prepared to say that Burwell is in a position to argue that his claim here is one of that kind, notwithstanding the record contains some evidence indicating that at the time Burwell was being pushed across the courtyard one of the wall guards shouted to let Burwell and Rogers go and he would shoot

them down.[2] I limit myself now to a holding that the circumstances of the case are such that there exists probable cause for permitting Burwell to argue this question and hence to present his appeal to this court.

The right of Rogers to make a similar argument is not so clear, although I think he should also be permitted a certificate of probable cause. Among the contentions made by him in respect to a denial of due process is that the district attorney removed and withheld from inspection by Rogers' attorneys the information and reports in the file of the county coroner compiled during the coroner's inquest upon the deaths of the victims of the homicide. Burwell and Rogers attempted to procure those records by mandamus proceedings in the California courts claiming that under the state statutes these were public records open to inspection of any citizen. Before the mandamus proceedings were concluded the trial of these petitioners began and the coroner's records were not available at the time of the trial. The California Supreme Court in dealing with this same contention upon the appeal held that before this denial could avail the petitioners anything there must be a showing that the withholding of the material resulted in prejudice to them or that they would gain some advantage by having access to this material before they went to trial. They did gain access to the material prior to the motions for a new trial. The court said, 279 P.2d at page 750: "The constitutional guaranties and prohibitions are not such as to require pretrial cooperation in a criminal case."

Of course when a defendant claims error because the trial court refused him a continuance in order to procure additional evidence, it is necessary that he show prejudice. But here the act complained of is an act of the prosecutor himself in withdrawing and concealing from a defendant material which might well lead to the discovery of additional witnesses who might or might not have been of assistance to the accused. I am of the opinion that a question of whether such conduct on the part of the prosecutor[3] operates as a denial of due process regardless of proof of prejudice is a substantial one warranting a certificate of probable cause.

The certificate of probable cause is therefore granted in each case.

2. From the State's brief on the appeal: "Apparently a guard on a guard rail stated that the so-and-so's would be shot if the Captain would let go of them. However Captain Nelson rebuked the guard and emphatically replied that no one would hurt them and that he would take them through safely."

3. "But, while he may strike hard blows, he is not at liberty to strike foul ones." Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314. Cf. United States ex rel. Montgomery v. Ragen, D.C., 86 F.Supp. 382, 387.