STATE *v.* GILES AND GILES

[No. 443, September Term, 1964.]

460

*Decided July 13, 1965.*

The cause was argued before HAMMOND, HORNEY, MAR-BURY, SYBERT, OPPENHEIMER and BARNES, JJ., and CARTER, C. J., of the Second Judicial Circuit, specially assigned.

· *Robert J. Martineau, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Leonard T. Kardy* and *James J. Cromwell, State's Attorney* and *Deputy State's Attorney,* respectively, *for Montgomery County,* on the brief, for appellant.

*Joseph Forer* and *Hall Witt* for appellees.

CARTER, C. J., by special assignment, delivered the majority opinion of the Court. OPPENHEIMER and HAMMOND, JJ., dissent. Dissenting opinion by OPPENHEIMER, J., at page 475 *infra.*

This is the third time the appellees, James V. Giles and John G. Giles, have been before this Court in connection with matters pertaining to their convictions for rape. In *Giles v. State,* 229 Md. 370, 183 A. 2d 359 (1962), *appeal dismissed* 372 U. S. 767 (1963), we affirmed convictions for rape committed by the appellees on a sixteen year old girl in Montgomery County on July 20, 1961. We subsequently affirmed the denial of a motion for a new trial based on newly discovered evidence in *Giles v. State,* 231 Md. 387, 190 A. 2d 627 (1963). The case at bar is an appeal by the State from the action of the Circuit Court for Montgomery County in granting the appellees a new trial on the rape charge under the provisions of the Post Conviction Procedure Act after it had ruled as a preliminary matter that the appellees were authorized to take depositions in post conviction proceedings. The new trial was awarded following the finding of the lower court that the prosecution had suppressed and withheld evidence from the appellees in violation of their constitutional right to due process.

On this appeal the State raises two questions. First, it contends that because the rules relating to the taking of depositions in civil proceedings are not applicable to proceedings under the P.C.P.A., it was error to permit the taking of depositions. The primary contention of the State, however, is that the new trial was improperly granted for two reasons. One, that the failure of the prosecution to turn over to the defense information it had pertaining to an alleged rape complaint, concerning an incident involving the prosecutrix (but not the appellees) that occurred after the rape for which the appellees were convicted but before the trial of their case, and, two, that the neglect to inform the defense of an alleged suicide attempt by the prosecutrix following the alleged rape incident, also before the trial of the charges against them, did not deny the appellees their right to due process under the facts and circumstances of this case.

Aside from the questions presented by the State, the appellees, without having filed a cross-appeal, raise two questions decided adversely to them at the hearing below. They contend that Rule 759 a, together with Rule 567 a, requiring motions for a new trial in a criminal case to be filed within three days after verdict is a denial of due process; and that the admission into

evidence at the trial of the original case of statements made by them when they were prime suspects, without advising them of their right to remain silent, and at a time when they were without counsel, was also a violation of due process. While the new trial was granted on the basis of the suppression of evidence relating to the alleged rape complaint and alleged suicide attempt the appellees would have us review all evidence concerning the sexual promiscuity of the prosecutrix, her claimed near probation status at the time of the rape, and her mental condition and health on the theory that evidence pertaining to these matters was also suppressed.

The undisputed and disputed facts surrounding the incident of July 20, 1961, which led to the convictions for rape were set forth in *Giles v. State, supra* (229 Md.). That case disclosed that on July 20, 1961, Joyce Roberts (the prosecutrix) and Stewart Foster were approached by three young colored males as they sat in an automobile in a secluded spot in Montgomery County. An argument ensued which resulted in the smashing of the automobile windows by the intruders and the unlocking of the doors of the vehicle. Stewart tried to ward off the attack but was knocked unconscious. Joyce got out of the vehicle and fled into the woods where, after a short distance, she tripped and fell. She hid in the underbrush but shortly thereafter was discovered by the three youths. She claimed that all three then had intercourse with her against her will and without her consent and that she put up little resistance because it appeared obvious to her it was futile to do so. John Giles claimed that after he found the prosecutrix she insisted he have intercourse with her but he declined. James Giles testified that the prosecutrix invited all three of them to have intercourse with her and that she specified the order in which they were to do so, and when his act was interrupted by lights from a police car all three fled the scene. Both of the Giles brothers testified that the prosecutrix told them she would have to say she had been raped if they were caught in the woods because "she was on a year's probation" or "was in trouble." Subsequent to their arrest, the appellees gave statements to the police in which James admitted he had intercourse with the girl but John denied such an act.

Sometime after the affirmance of the rape convictions we had

before us the appeal by the appellees from a denial of a motion for a new trial based on newly discovered evidence. The claimed newly discovered evidence primarily involved the testimony of Stewart Foster at the criminal trial and extrajudicial statements made by him to a girlfriend concerning the person or persons responsible for provoking the attack on the automobile in which Foster and the prosecutrix were sitting prior to the rape. Based on the rule requiring motions for a new trial in criminal cases to be made within three days after verdict we affirmed the denial of the motion. Subsequent to this the death sentences imposed on the appellees were commuted to life imprisonment. Thereafter relief was sought by the appellees under the P.C.P.A. which resulted in this appeal by the State from the granting of the relief sought.

At the hearing in the post conviction proceeding it was shown that about September 1961 a member of the Montgomery County Bar was appointed to represent the appellees as indigent defendants. He made an investigation of the case which included a discussion of the matter with the State's Attorney for Montgomery County and an examination of the prosecution's entire file, including the police report. While counsel for the appellees was prohibited from discussing the case with Joyce Roberts by her mother, he knew the facts surrounding the alleged consent of the prosecutrix from his discussions with the Gileses. Although he tried to examine the records of the juvenile courts in Montgomery and Prince George's Counties, the attorney was not permitted to see those records.

The most pertinent evidence adduced at the post conviction hearing involved an alleged suicide attempt by the prosecutrix and an alleged false rape claim. It was shown that on August 26, 1961, about five weeks after the rapes by the appellees and Joseph Johnson, the prosecutrix went to a party in Prince George's County and that when she entered a bathroom a boy followed her and had intercourse with her against her will. The extent of her resistance was to remove his hands from her body several times. Shortly thereafter another boy had intercourse with her in the yard of the premises where the party was being held which was against her will, but she offered no resistance to this act. On previous occasions the prosecutrix had had

intercourse with one of the boys and would have consented to both acts on this occasion but for the fact she was fearful they would tell other boys at the party and they would all want to do the same thing. The following morning Joyce was admitted to the Prince George's General Hospital after having taken an overdose of bufferin tablets and sleeping pills in what was diagnosed as an attempted suicide. The above facts were brought out at the post conviction hearing by the testimony of Sgt. Wheeler of the Prince George's County police who interviewed the prosecutrix in the hospital on August 30, 1961, after he had received a complaint from Joyce's father that she had been raped at the party on August 26, 1961. Joyce Roberts was not called as a witness at the post conviction hearing.

While the prosecutrix was in the hospital for having taken the overdose of pills she was visited by a boyfriend who asked her why she had taken the pills. She told him she had been raped and that this was her reason for taking the pills. Without Joyce's knowledge the boy informed her mother of the incident of August 26 as related to him by Joyce. The prosecutrix' father then made a complaint of the alleged rape to Lt. Whalen of the Montgomery County police. The officer told Joyce's father to contact the Prince George's County police since the alleged rape had taken place in that county. Lt. Whalen made no investigation of the complaint nor of the facts surrounding the overdose of pills taken by Joyce of which he was also informed. He was never affirmatively informed that Joyce had attempted suicide. Although Lt. Whalen was aware of the fact that Joyce's mother had at one time taken her to see a psychiatrist, he did not have any information that Joyce was mentally disturbed or mentally ill. Aside from not pursuing any of the facts surrounding the incident of August 26th and the taking of the overdose of pills, Lt. Whalen did not make any investigation into the character of the prosecutrix when he was investigating the rape complaint of July 20, 1961.

It was after being advised by Lt. Whalen to report the incident of August 26th to the Prince George's County police that Joyce's father made the complaint which resulted in Sgt. Wheeler's visit to the hospital. At the time of the interview Sgt. Wheeler did not know that Joyce was the complaining witness

in a rape case in Montgomery County. After relating the incident that occurred at the party to the police officer, Joyce informed him that she did not wish to make any complaint of rape and that she had not authorized any such complaint to be made. Based upon these statements and upon Joyce's assertion that she would refuse to testify if any such complaint was pursued, Sgt. Wheeler, with the consent of Joyce's father, marked the case "closed and unfounded."

The State's Attorney for Montgomery County testified at the post conviction hearing that prior to the trial of the criminal case he knew Joyce Roberts had been hospitalized for taking excessive drugs and, although he had no direct information of any suicide attempt he suspected the drug incident might have been connected with the occurrence of July 20, 1961. The prosecutor had been informed of a rape charge in Prince George's County involving Joyce Roberts in which the charge was made by another, but he was also aware that the charge had been investigated and dropped.

With respect to the overdose of sleeping pills as indicating an attempted suicide by the prosecutrix, the records of Prince George's General Hospital disclosed that Joyce Roberts was admitted on August 27, 1961, following the taking of an overdose of bufferin tablets and sleeping pills in a suicide attempt, secondary to "adjustment reaction of adolescence." The record showed that the prosecutrix was given an admitting diagnosis as a psychopathic personality, placed in the psychiatric ward, and discharged after nine days. The case history stated that "this present episode is result of parental arguing, incompatibility with parents, and difficult adjustment." The attending physician diagnosed the condition of the prosecutrix as an adolescent reaction. In the opinion of a psychiatrist the prosecutrix was mentally ill at the time of the attempted suicide since he considered an attempted suicide by a teenager as evidence of psychopathology, a mental disorder. He recognized, however, that many conditions, not derived from mental illness, could cause a suicide attempt and that the fact the prosecutrix may have been mentally ill on August 26, 1961, would not permit an opinion as to her mental condition at the date of the trial several months thereafter.

Aside from the evidence hereinbefore set forth, several affidavits were filed at the post conviction hearing. These affidavits, executed by acquaintances of Joyce Roberts, indicated that she was a sexually promiscuous girl.

While the primary question before us concerns the suppression of evidence we shall first dispose of the two questions decided adversely to the appellees as to which they did not appeal; and the question relating to the taking of depositions in post conviction proceedings. The appellees contend they are entitled to have this Court consider the questions raised by them below as to the constitutionality of the Maryland Rule requiring motions for a new trial based on newly discovered evidence to be filed within three days after verdict and the admission in evidence at the criminal trial of statements made by them when they were without counsel and not advised of their right to remain silent. Notwithstanding the fact that these claims were overruled by the lower court and no cross-appeal was taken therefrom, the appellees contend that they are entitled to have the judgment below affirmed for these reasons in addition to those assigned by the lower court. Although the question of whether a cross-appeal need be taken appears to be a novel one in a proceeding of this nature, closely related rulings have been made supporting the appellees' position. It has been held that an appellant is not entitled to the reversal of a judgment favorable to the appellee, even though error was committed against the appellant below, where it appears from the record that a directed verdict in the appellee's favor should have been granted. Such rulings are predicated upon the theory that no ultimate prejudice is shown to the appellant if he could not recover in any event, even though he were granted a new trial. See *Ragonese v. Hilferty*, 231 Md. 520, 191 A. 2d 422 (1963), and *Texas Co. v. Washington B. & A. R. Co.*, 147 Md. 167, 175, 127 Atl. 752 (1925). Assuming, without deciding, therefore, that the appellees are entitled to reassert the contentions raised below, they lack substance for the reasons hereafter stated.

With respect to the constitutionality of Rule 567 a, requiring motions for a new trial to be filed within three days of the date of the verdict, as made applicable to criminal cases by Rule 759 a, this Court, in *Giles v. State, supra* (231 Md.), ruled that

a motion for a new trial in respect to the subject trial, not having been filed within three days of the verdict as required by Rule 567 a, was for that reason properly denied by the lower court. In so ruling, it is implicit that the rule itself was a valid and constitutional procedural requirement. Although the rules of procedure authorize a motion for a new trial, we recently noted that in the absence of state constitutional or statutory requirements, due process does not guarantee one the right to file a motion for a new trial after conviction for a criminal offense. *Brown v. State,* 237 Md. 492, 498, 207 A. 2d 103 (1965). There is no merit to the appellees' attack on the three day rule.

There is likewise no merit to the contention of the appellees that they had been denied their right to counsel by the admission of statements made when they were not represented by counsel and not affirmatively advised of their right to remain silent in violation of their right to due process. This same contention was raised in the recent case of *Cowans v. State,* 238 Md. 433, 209 A. 2d 552 (1965), wherein we stated that we did not interpret the Supreme Court decisions in *Gideon v. Wainwright,* 372 U. S. 335 (1963), *Massiah v. United States,* 377 U. S. 201 (1964) and *Escobedo v. Illinois,* 378 U. S. 478 (1964), "as making an affirmative advising of an arrestee of his right to counsel, before the taking of a confession, a prerequisite to its admissibility (in a State prosecution) provided, of course, that the confession was freely and voluntarily given under the totality of the attendant circumstances, or that a failure to inform, explicitly, an arrestee of 'his right to remain silent' destroys the voluntariness of his confession and thereby renders it inadmissible." In adhering to this position, we hold that the lower court correctly refused to grant relief on the claim that the admission of statements made to the police was a violation of due process.

With respect to the authority of the appellees to take depositions in a proceeding of this nature, the lower court found that proceedings under the P.C.P.A. are civil in nature and that the rules relating to civil proceedings are applicable to them. The rules governing post conviction procedure are to be found in Rules BK40 through BK48 in Chapter 1100 titled "Special Proceedings" and not under Chapter 700 dealing with procedure

in "Criminal Causes." And Rule 1000 titled "Special Proceedings-General Rules Applicable" provides that "the preceding Rules, Chapters 1, 100 to 600 inclusive and 800 are applicable to Special Proceedings dealt with in Chapter 1100, except insofar as the Rules contained in Chapter 1100 otherwise provide expressly or by necessary implication." Regardless therefore of whether the rules governing post conviction proceedings are civil in nature, there seems to be little doubt, since Rule 1000, providing that Chapter 400 (Depositions and Discovery) is applicable to Chapter 1100 (Special Proceedings), that the authorization to take depositions in post conviction proceedings was proper, and we so hold.

The principal question involved in the case at bar relates to the failure of the prosecution to turn over to the defense prior to the trial of the criminal case information it had pertaining to the alleged rape complaint arising out of the incident of August 26, 1961, and the attempted suicide. The court below found that this information could reasonably be considered admissible and useful to the defense and therefore the failure of the prosecution to disclose it, even though it may not have been withheld for an improper motive, amounted to a suppression of evidence in violation of the rights of the appellees to due process of law.

It is clear that the suppression or withholding by the State of material evidence exculpatory to an accused is a violation of due process and is ground for relief under the P.C.P.A. *Brady v. State,* 226 Md. 422, 174 A. 2d 167 (1961), *aff'd.* 373 U. S. 83 (1963) ; *Stroswider v. Warden,* 228 Md. 663, 180 A. 2d 854 (1962). The appellees contend that for the purpose of determining the applicability of the suppression rule, evidence is material if it could reasonably have been considered admissible and useful to the defense regardless of whether it is technically admissible and useful in the sense that it contradicts trial evidence. The appellees rely on *Griffin v. United States,* 183 F. 2d 990 (D. C. Cir. 1950), and *Barbee v. Warden,* 331 F. 2d 842 (4th Cir. 1964), and further contend that if the *Griffin* admissible and useful test is met the withholding of evidence amounts to a denial of due process if the State had knowledge of the evidence and the defense did not.

While we agree that evidence which is claimed to have been suppressed must be reasonably considered to be admissible and useful before suppression may be said to exist, this is not the sole test in determining when a suppression of evidence can be said to amount to a denial of due process. Not only must the evidence withheld be admissible and useful, but it must be such, if it had been offered in evidence, as would be capable of clearing or tending to clear the accused of guilt—*i.e.,* it must be exculpatory. For a definition of "exculpatory" see *Dean v. State,* 381 P. 2d 178 (Okl. 1963).

Although the Circuit Court of Appeals in *Griffin v. United States, supra,* recognized the necessity of the prosecution disclosing evidence that "may reasonably be considered admissible and useful to the defense" under the facts of that case, it is clear that the undisclosed evidence, which concerned threats of the victim toward the person accused of murder, was obviously material and exculpatory evidence to which a jury would attach significance. Likewise, in *Barbee v. Warden, supra,* which followed the reasonably admissible and useful language of *Griffin,* the evidence suppressed, which was a police department ballistics report to the effect that the gun found in the defendant's car and described by witnesses as similar to the one carried by him at the time of the shooting was not the gun used in the shooting, the nondisclosure was properly held to be a denial of due process in that the evidence was material and exculpatory to the accused. For holdings that the evidence suppressed must be material to the guilt or innocence of the accused or to the penalty to be imposed in order to constitute a denial of due process, see *State v. Morris,* 365 P. 2d 668 (N. M. 1961) and *Brady v. Maryland,* 373 U. S. 83 (1963). In *Brady,* where the accused made a request for evidence that had not been disclosed, the Supreme Court held that the suppression of evidence by the prosecution favorable to an accused was violative of due process where the evidence was material either to guilt or to punishment.

We think that in order for the nondisclosure of evidence to amount to a denial of due process it must be such as is material and capable of clearing or tending to clear the accused of guilt or of substantially affecting the punishment to be im-

posed in addition to being such as could reasonably be considered admissible and useful to the defense. And, as pointed out in *Barbee,* in a situation involving passive nondisclosure an inquiry must be made into the question of whether the nondisclosure may have operated to the prejudice of the accused. Certainly there should be no duty on the prosecution to disclose evidence that is available to the accused or lacking in probative value, or, in some circumstances, evidence that is merely circumstantial. See *Jordon v. Bondy,* 114 F. 2d 599 (D. C. Cir. 1940) and *Butt v. Graham,* 307 P. 2d 892 (Utah 1957). See also *Brady v. Maryland, supra,* and 60 Colum. L. Rev. 858. The defense may be as well able to explore outside sources of information as the prosecution. *United States v. Lawrenson,* 298 F. 2d 880 (4th Cir. 1962).

In order to decide what evidence can be said to have been suppressed it is first necessary to determine what the prosecution was charged with knowing. As was pointed out in *Barbee,* at p. 846, "the police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney, were guilty of the nondisclosure." It would not be unreasonable therefore to charge the prosecutor and his agents who have the duty of preparing and presenting the case, with knowledge of all seemingly pertinent facts related to the charge which are known to the police department who represent the local subdivision that has jurisdiction to try the case. Under this rule the State's Attorney for Montgomery County should be charged with knowledge of those facts known to the police department of that county. Thus all knowledge of Lt. Whalen pertaining to the prosecutrix would be chargeable to the State's Attorney. To go further would impose a practically impossible and unworkable burden on local authorities.

Applying the criteria above set forth to the facts of the case at bar, the strongest reasonable inference which the prosecution could conclude from the information known to it when considered in connection with other evidence in the case, would appear to be: that Joyce Roberts had probably been involved in some sexual activities with boys on the evening of August 26th under circumstances not amounting to criminal rape, on which her father preferred rape charges, but which investigation

showed were groundless; that on the same evening she had intentionally taken an overdose of sleeping pills in an attempt to commit suicide and as a result had been admitted to a hospital; and that for reasons known only to her mother, the mother had taken her daughter to a psychiatrist.

As we see it, the prosecution should disclose to the defense such information as it has that may reasonably be considered admissible and useful to the defense in the sense that it is probably material and exculpatory, and where there is doubt as to what is admissible and useful for that purpose, the trial court should decide whether or not a duty to disclose exists. Assuming that there was reason for doubt on the part of the prosecution in this case as to whether the evidence known to it was reasonably admissible and useful as tending to affect guilt or punishment and that there was therefore a duty to disclose it, we think the failure of the prosecution to disclose the information relating to the alleged rape of August 26th and the subsequent suicidal attempt was not prejudicial to the appellees and did not therefore warrant the granting of a new trial on the basis of the denial of due process. We shall first consider the attempted suicide, which the lower court found to be evidence of mental derangement and admissible for the purpose of impeaching the credibility of the prosecutrix.

The attempted suicide is said to be admissible and useful for purposes of showing that the prosecutrix was mentally incompetent as a witness and for purposes of impeaching her credibility as a witness. The record, however, does not disclose any medical or other competent evidence to establish or even indicate that if the attempted suicide on August 26, 1961, had been known to the defense, together with all other facts and circumstances shown by the record, that such information could collectively constitute a legally sufficient basis upon which an opinion could be predicated that the prosecutrix was mentally incompetent as a witness on the date of the trial in December 1961, or that her testimony was not to be believed. Although the psychiatrist called by the appellees at the hearing below testified that an attempted suicide by a teenager was in his opinion evidence of mental illness, he stated that an attempted suicide on August 26, 1961, would not permit an opinion as to

the mental condition of the prosecutrix at the date of the trial. As the testimony of the psychiatrist disclosed, an attempted suicide may result from causes not connected with mental illness. The State's Attorney for Montgomery County, when he first heard of the attempted suicide, believed it may have been related to the incident of July 20, 1961. Certainly it would not be unreasonable for a jury to conclude that an attempted suicide by a teenage girl was indicative of emotional disturbance caused by an attack upon her by three young colored males. Based on the evidence relating to the attempted suicide that was claimed to have been suppressed there is nothing to indicate that the suicide attempt was material to the competency of the prosecutrix as a witness at the criminal trial or to the question of consent. Neither the case of *State v. Poolos,* 85 S. E. 2d 342 (N. C. 1955), nor *Powell v. Wiman,* 287 F. 2d 275 (5th Cir. 1961), relied on by the appellees are persuasive on this point. The former case was one in which a question asked a witness for the state as to a prior attempt to commit suicide was said to be proper for purposes of impeachment. In the latter case, the prosecution knowingly suppressed evidence of the insanity of a witness and of a statement made by him to the police in contradiction of his testimony at the trial. Even if evidence in the case at bar as to the attempted suicide were admissible we do not think it would be material to the guilt of the appellees or the punishment to be imposed in light of the facts surrounding the attempted suicide which clearly showed that it was an outgrowth of an incident totally unrelated to the one for which the appellees were convicted of rape. Inasmuch as this evidence in no way showed the prosecutrix was mentally incompetent as a witness, or would have been in contradiction of any of the testimony given by her at the criminal trial, we find that its probative value was such as not to have been material to the credibility of the prosecutrix and therefore the failure of the prosecution to disclose such information did not amount to a denial of due process.

With respect to both the attempted suicide and the alleged false rape claim, it is important to note that we have held that specific acts of misconduct are not admissible to affect the credibility of a witness, for credibility must ordinarily be attacked

by evidence of general reputation for truth or veracity or material contradictory facts. *Rau v. State,* 133 Md. 613, 105 Atl. 867 (1919) ; *Shartzer v. State,* 63 Md. 149 (1885). With respect to the alleged rape claim as evidence of the prosecutrix' general reputation for unchastity, the court below found that the appellees knew of the unchastity of the prosecutrix prior to the trial of the criminal case. Where consent is at issue, specific acts of intercourse with others prior to the alleged rape are not admissible to establish lack of chastity. But evidence of general reputation for unchastity is admissible. See *Giles v. State,* 229 Md. 370, 183 A. 2d 359 (1962) ; *Humphreys v. State,* 227 Md. 115, 175 A. 2d 777 (1961) ; *Shartzer v. State, supra.* By the Giles' version of the incident of July 20, 1961, as related to their attorney, the defense certainly had some question as to the character of the prosecutrix which properly could have been investigated. In view of this and as evidenced by the examination of witnesses at the criminal trial, the defense must have known of the prosecutrix' general reputation for unchastity and that she was a sexually promiscuous girl. It is difficult therefore to see how evidence of the alleged rape claim would have added anything of consequence to what the defense already knew or should have known.

The court below, in relying on *Smallwood v. Warden,* 205 F. Supp. 325 (D. Md. 1962), was of the opinion that the rape claim was admissible for purposes of impeachment, but in that case, where the question was one of adequacy of counsel, the prosecution, unlike the case at bar, had knowledge of the history, physical condition and reputation of the prosecuting witness, all of which was said to have likely affected the result of the trial. While evidence of a rape claim may be relevant when the basis for the claim is clearly lacking, the record here shows that the prosecutrix did not make a complaint and that she cannot therefore be said to have made a false rape claim. There was in this case no evidence from which a jury could have concluded that since a false rape claim was intentionally made by the prosecutrix on one occasion it raised considerable doubt as to the validity of the claim made against the appellees. However the incident of August 26th may be interpreted, it permits of no conclusion that the prosecutrix made a false rape claim.

The claim was made by her father after statements made by the prosecutrix to a boyfriend were communicated to him. While Joyce freely discussed the incident with Sgt. Wheeler she denied that any rape had occurred. Thus the only possible use of the facts surrounding the alleged rape claim would be for purposes of showing the unchastity of the prosecutrix, a fact that was already known to the defense at the time of the rape trial.

The appellees, however, argue that the subsequent rape claim goes to credibility and is material to the mental illness of the prosecutrix. It is their contention that evidence of her sexual promiscuity and of the alleged rape claim shows she is afflicted with nymphomania—a type of mental illness. While evidence of nymphomania was held admissible in *People v. Bastian,* 47 N. W. 2d 692 (Mich. 1951), to conclude that such an illness existed in the case at bar would be to engage in sheer speculation and conjecture. What the appellees would have us do is to take the facts presented at the post conviction hearing and to draw conclusions therefrom that are not supported by the record. Even if the prosecutrix can be said to have been suffering from nymphomania, there is nothing to show that this made her incompetent as a witness or that she consented to the acts for which the appellees were convicted.

Although the new trial was granted by the court below solely on the suppression of evidence relating to the alleged suicide attempt and alleged rape claim, both of which arose out of the incident of August 26th, the appellees also claim that evidence was suppressed as to the near probation status of the prosecutrix and as to the fact that her mother had taken her to see a psychiatrist. Without prolonging an already lengthy opinion in this case which the appellees seek to retry on an appeal by the State, it will suffice to say that there is nothing in the record to show a withholding of evidence with respect to either of these matters.

We hold that the evidence held by the lower court to have been suppressed was neither material to the guilt of the appellees or to the punishment to be imposed, nor was the failure to disclose prejudicial to the accused. The nondisclosure, there-

fore, cannot be said to have amounted to a denial of due process.

*Order reversed; the appellees to pay the costs.*

OPPENHEIMER, J., filed the following dissenting opinion, in which HAMMOND, J., concurred.

The evidence admittedly withheld by the State, in my opinion, could have been of vital importance to the defense of the accused and its withholding constituted a violation of due process of law.

The appellees' defense to the charge of rape was that their assault upon the white companion of the prosecutrix was provoked by his obscene racial remarks and that the prosecutrix not only consented to intercourse with two of the appellees but suggested it and invited it.[1] The appellees testified that the prosecutrix, prior to any acts of intercourse, had said to them that she had already had sexual intercourse with sixteen or seventeen boys that week and two or three more wouldn't make any difference. The appellees also testified that the prosecutrix, while consenting to the intercourse, said that she was on probation and if caught by the police would have to claim that she was raped. This testimony was denied by the prosecutrix at the trial and obviously was not believed by the triers of fact who convicted the appellees.

The essential facts established at the post conviction hearing are not in dispute. Detective Lieutenant Whalen of the Montgomery County Police Department, prior to the trial of the appellees, had received a call from the family of the prosecutrix stating that she had been raped by two men in August of 1961, which was about five weeks after the acts for which the appel-

---

1. In Giles v. State, 229 Md. 370, 183 A. 2d 359 (1962), in affirming the appellees' convictions on appeal, we referred to the conflicting evidence as to consent. The complete transcript of the testimony at the trial was introduced in the hearing under the Post Conviction Procedure Act as a result of which Judge Moorman granted a new trial. The entire testimony at the criminal trial is therefore before us on this appeal.

lees were to be tried. The lieutenant had also received information that the prosecutrix had taken a number of sleeping pills and had been taken to the hospital. He had previously known that at one time the mother of the prosecutrix had taken her to see a psychiatrist. Upon receipt of the call as to the alleged rape, Lieutenant Whalen told the prosecutrix's father to get in touch with the Prince George's County Police, since the alleged rape had taken place in that county. The State's Attorney for Montgomery County had also been informed before the trial of the appellees that a complaint had been made in Prince George's County that the prosecutrix had been raped by other persons after the acts for which the appellants had been charged and he was aware that the subsequent charge had been investigated and dropped. The State's Attorney had also been informed that the prosecutrix had been hospitalized for taking an overdose of drugs and assumed that she had done so intentionally. None of this information known by the police lieutenant and the State's Attorney was communicated to the court appointed counsel of the appellees prior to their trial and their counsel had no knowledge thereof.

In *Brady v. State,* 226 Md. 422, 174 A. 2d 167 (1961), we held that the suppression or withholding by the State of material exculpatory to an accused is a violation of due process even if, as here, the withholding is not the result of guile. In that case, the State contended that the evidence withheld, which was an extra judicial confession or admission by a third party that he had committed the offense for which the defendant was tried, was not admissible. In delivering the opinion for the Court, Chief Judge Brune considered the authorities pro and con as to whether or not such a confession was admissible. Without coming to any conclusion as to its admissibility, Judge Brune said, for the Court:

> "We think that Boblit's undisclosed confession might have been usable under any of the three rules stated in *Thomas,* which we have quoted above, and hence could not be regarded as inadmissible and unusable in any manner in Brady's defense."

Judge Brune's opinion goes on to say:

> "There is considerable doubt as to how much good Boblit's undisclosed confession would have done Brady if it had been before the jury. It clearly implicated Brady as being the one who wanted to strangle the victim, Brooks. Boblit, according to this statement, also favored killing him, but he wanted to do it by shooting. We cannot put ourselves in the place of the jury and assume what their views would have been as to whether it did or did not matter whether it was Brady's hands or Boblit's hands that twisted the shirt about the victim's neck. To apply the words of the Supreme Court of the United States in *Griffin v. United States,* 336 U. S. 704 at 708-709, quoted by the Court of Appeals of the District of Columbia Circuit in its opinion on remand of the case, above cited (183 F. 2d at 992), it seems to us (as it did to the Court of Appeals of the District in *Griffin*) that it would be 'too dogmatic' for us to say that the jury would not have attached any significance to this evidence in considering the punishment of the defendant Brady.
>
> "Not without some doubt, we conclude that the withholding of this particular confession of Boblit's was prejudicial to the defendant Brady." 226 Md. at 429-30.

In the words of the Court of Appeals in *Griffin v. United States,* "when there is substantial room for doubt, the prosecution is not to decide for the court what is admissible or for the defense what is useful."

In this case, the information withheld by the prosecution, in my opinion, would have been admissible, in whole or in part, on cross-examination of the prosecutrix and was clearly usable in the defense of the appellees. The lodging of a complaint of rape on behalf of the prosecutrix and the subsequent withdrawal of the complaint took place between the alleged offenses of the appellees and their trial. These facts could well have been used to support the claim of the appellees that the prosecutrix consented to intercourse with them and thereafter, as they said

she had told them she might do, made an unjustified claim that she had been raped.

The withheld evidence of her attempted suicide might well have been used by counsel for the appellees to attack the credibility of the prosecutrix because of mental or emotional illness. While I have not been able to find a Maryland case deciding whether or not testimony of mental illness or emotional disturbance not amounting to insanity is admissible for the purpose of discrediting the prosecutrix in a sex case, there is authority elsewhere holding such evidence to be admissible.[2] The suppressed information might also have been used by the appellees in an endeavor to show that the prosecutrix was a nymphomaniac.[3]

As in *Brady,* the test is not whether the evidence clearly would have been admissible but whether it must be regarded as inadmissible and unusable in any manner in defense of the appellees. The question of actual admissibility, particularly in a case such as this, can only be passed upon in the context of

---

**2.** Taborsky v. State, 142 Conn. 619, 116 A. 2d 433 (1955). See also United States v. Hiss, (D.C.S.D.N.Y. 1950), 88 F. Supp. 559. Contra. Garrett v. Alabama, 268 Ala. 299, 105 So. 2d 541 (1958).

**3.** In People v. Bastian, 330 Mich. 457 (1951), it was held that on a trial for statutory rape the trial court was in error in sustaining an objection to a line of cross-examination which counsel for the defendant said would tend to establish that the prosecutrix was a sexual psychopath. The Supreme Court of Michigan held that the proffered testimony was relevant to the credibility of the prosecutrix, particularly if sufficient to indicate that she was a nymphomaniac. People v. Cowles, 246 Mich. 429, 224 N. W. 387 (1929) is to the same effect.

"Occasionally is found in woman complainants, testifying to sex-offences by men, a dangerous form of abnormal mentality,—dangerous here, because it affects testimonial trustworthiness while not affecting other mental operations. It consists in a disposition to fabricate irresponsibly charges of sex-offences against persons totally innocent. The genesis and operations of this quality are sufficiently shown in the passages quoted *ante,* § 924a (character for chastity). Sometimes it is associated with unchaste conduct in the witness, sometimes not. But its nature is well known to psychiatrists and is recognizable by them. Testimony to its existence in an individual should always be receivable." Wigmore on Evidence, § 934a (3rd ed. 1940).

actual cross-examination and proffered testimony. Such cross-examination and additional testimony might well have been admissible and, if admissible, were usable in the defense of the appellees. That is clearly sufficient.

The opinion of the majority holds that the information withheld by the State was not material evidence exculpatory to the appellees. With all deference, it seems to me that my brethren are arguing the weight of the evidence and put themselves in the place of the triers of the facts. While counsel for the appellees knew of prior acts of unchastity of the prosecutrix, the additional withheld evidence might have made possible a far more effective cross-examination than mere knowledge of prior acts of unchastity of itself permitted.

What has been said pertains only to the actual information known to and withheld by the State's Attorney and Lieutenant Whalen. However, this information, important as it was of itself to the defense, was also usable as the basis for further investigation. Although the prosecution did not choose to investigate further the information which had been received, if that information had been made available to the appellees' counsel, it would have been a short and logical step for him to pursue what had happened in Prince George's County after the claim of the alleged rape had been made and after the prosecutrix had been hospitalized there. He could have easily ascertained the additional facts adduced at the post conviction hearing. These facts included the statements of the prosecutrix to Detective Sergeant Wheeler of the Prince George's County Police that during the preceding two years she had had numerous acts of sexual intercourse with a large number of boys and men, many of whom were unknown to her, and that she had accused two men in the Prince George's County incident of rape to explain why she took the overdose of pills, although she also told Wheeler that she would refuse to testify against the two men if they were charged with rape. The hospital record of Prince George's General Hospital showed the diagnosis of attempted suicide by the prosecutrix and the admitting diagnosis of psychopathic personality. An interview with Dr. Connor, who testified in the post conviction hearing, would have readily shown

that the prosecutrix had been confined in the hospital's psychiatric ward for nine days.[4]

This additional information would have materially strengthened the usable lines of defense inherent in the information actually withheld by the prosecution. It seems clear to me that the facts which the State knew and did not communicate would have been helpful to counsel for the appellees in pursuing the new important lines of inquiry obviously indicated. The State can not claim the withheld information was unusable by the defense because the prosecution chose to know no more.

The *Brady* and *Griffin* rule rests on basic principles of fairness. If information is withheld by the prosecution and if that information, although not pursued by the prosecution, of itself would have reasonably led to the procuring of information usable in any manner in the defense of the accused, that fact of itself should make the withholding of the uncommunicated matters the basis for a new trial. We are dealing here with capital charges. The appellees were represented by court appointed counsel who, however able and conscientious, could not have the facilities of investigation available to the State. The information withheld would have made the procuring of the further, and possibly vital, information easily obtainable.

The issue before us is not the guilt or the innocence of the appellees but whether, under all the circumstances, the withholding of the information by the State constituted a violation of due process. In my judgment, it clearly did. I would affirm the order of Judge Moorman granting a new trial.

---

4. Testimony that a witness has been confined in a mental hospital has been held admissible on the issue of credibility. Walley v. State, 240 Miss. 136, 126 So. 2d 543 (1961); People v. Kirkes (Cal. Dist. Ct. App. 1952) 243 P. 2d 816.