Joyce Carol **EDMISTON**, also known as Joyce Carol **Roberts**, Plaintiff,

v.

**TIME, INCORPORATED**, Defendant.

No. 65 Civ. 3408.

United States District Court
S. D. New York.

Aug. 3, 1966.

Adler & Apicella, New York, N. Y., by Cyrus B. Adler, for plaintiff.

Cravath, Swaine & Moore, by Harold R. Medina, Jr., and Frederick A. O. Schwarz, Jr., New York City, of counsel, for defendant.

## OPINION

TYLER, District Judge.

Defendant ("Time") moves for judgment on the pleadings pursuant to Rule 12(c), F.R.Civ.P. The suit is for libel and invasion of privacy based upon an article entitled, "A Girl's Reputation", in the law section of the August 6, 1965 issue of *Time Magazine*. The motion before this court is based upon Time's affirmative defense that the article in question is a fair and true report of a judicial proceeding and thus is privileged. See Section 74 of the New York Civil Rights Law.[1]

The allegedly defamatory article is appended to plaintiff's complaint, and the opinion of the Court of Appeals of Maryland about which the article was written and upon which the affirmative defense of privilege is based is attached to the defendant's answer.

To put the motion and the opposition thereto in some context, the lead paragraph of the article in question adequately states the issue posed in the Maryland Court of Appeals decision [2] under discussion to be, " * * * exactly how much a DA can keep the defense in the dark".[2a] The issue arose out of a widely reported inter-racial rape case in Montgomery County, Maryland. Three young Negro defendants were charged and, after trial, convicted of raping a sixteen year old white girl, the plaintiff

---

1. 8 McKinney's Consol.Laws of N.Y., c. 6, Sec. 74.

2. State v. Giles, 239 Md. 458, 212 A.2d 101 (1965).

2a. Surely an issue of considerable current interest to commentators, lawyers and judges. See Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

in this case.[3] The principal defense of the defendants at trial was consent by the prosecutrix.

Some time after the conviction and unsuccessful direct appeals therefrom, newly appointed counsel for two of the defendants, Messrs. John and James Giles, sought a new trial on the grounds that the prosecution had withheld from the defense information bearing upon Joyce Roberts' assertedly promiscuous past, which evidence, of course, presumably would be relevant to the defense of consent. The trial court after hearing granted this motion, but on appeal, the Court of Appeals, with two judges dissenting, reversed, holding that defense counsel at the original trial knew or should have known that Joyce Roberts was a "sexually promiscuous girl". 212 A.2d 101, at page 110. Earlier this year, the Supreme Court of the United States granted certiorari to review this decision. Giles v. State of Maryland, 383 U.S. 941, 86 S.Ct. 1194, 16 L.Ed.2d 205 (1966).

Plaintiff concedes that the allegedly defamatory article and the relevant opinion of the Maryland Court of Appeals are both before the court. Indeed, plaintiff's counsel specifically asserts in his memorandum of law that the plaintiff has no quarrel with the cases cited by defendant in its briefs. Plaintiff and her counsel, therefore, rest their opposition upon the submission that the article in question was not a fair and true report of the opinion of the Court of Appeals of Maryland in that the article reports that plaintiff "had sexual intercourse with two white boys", but omits the three additional words, "against her will", which in the pertinent passage of the Court of Appeals opinion were included after the phrase, "sexual intercourse".

Section 74 of the New York Civil Rights Law provides in pertinent part as follows:

"A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, * * * or for any heading of the report which is a fair and true headnote of the statement published. * * * *"

██ Although I do not understand plaintiff to argue to the contrary, I conclude independently that inasmuch as suit was commenced against the defendant in this federal court within the boundaries of the State of New York, the provisions of Section 74 are applicable to this controversy. See Phillips v. Murchison, 252 F.Supp. 513, (S.D.N.Y.1966). As defendant cogently argues, Section 74 is a "door-closing statute" which makes it contrary to the public policy of the State of New York to permit a claim, wherever it may be deemed to have arisen, to be sued out before the courts of this state if it in fact is based upon fair and true reports of judicial proceedings. Such a door-closing policy can and should be binding upon a federal court sitting within the state. See Angel v. Bullington, 330 U.S. 183, at pages 191–192, 67 S.Ct. 657, 91 L.Ed. 832 (1947); Phillips v. Murchison, supra, 252 F.Supp. at p. 520.

██ From what has already been said, it is apparent that all of the necessary and material facts are before this court in the form of the allegedly offending article and the pertinent portion of the judicial proceedings as reported in the opinion of the Maryland Court of Appeals. Under such circumstances, it is appropriate for this court upon defendant's motion to make a determination of whether or not the opinion of the Maryland court was fairly and truly reported in the August 6 article. See Schachter, et al. v. News Syndicate Co., Inc., et al., 270 App.Div. 378, 59 N.Y.S.2d 693 (1st Dept.1946); George v. Time, Inc., 259 App.Div. 324, 19 N.Y.S.2d 385, at page 386 (1st Dept.1940); Seelman, Libel and Slander in the State of New York (rev. ed. 1964) at page 278.

Upon reading and comparing the entire opinion of the Court of Appeals with

---

3. In Maryland, the felony of statutory rape is defined to apply to females under 14 years of age. Annotated Code of Maryland, Article 27, Sec. 462.

the August 6 article, I conclude that the latter is obviously a fair and true report and that thus this action cannot lie as being within the prohibition set forth in Section 74 of the Civil Rights Law.

██ One approach leading to this inescapable result can be summarized very briefly. For obvious reasons, defendant need not show that its article was a substantially verbatim or precisely accurate recounting of the Maryland court's opinion. All that is required is a showing that the article sets forth "substantially a fair account of what took place". Andrews v. Chapman, 3 C & K 286, at page 289. Indeed, as some of the New York cases have put it, a fair and true report admits of some reasonable liberality. Briarcliff Lodge Hotel v. Citizen-Sentinel Publishers, Inc., 260 N.Y. 106, at page 113, 183 N.E. 193 (1932). I believe that these sensible rules have been fairly complied with, not only in the article as a whole but even within the four corners of the third paragraph wherein appears what plaintiff contends to be the offensive omission of the words, "against her will". The particular sentence from which these words are omitted and the immediately following sentences in the third paragraph of the article are worthy of repetition here:

> " * * * In addition, shortly before the trial, she had gone to a party in nearby Prince George's County and had had sexual intercourse with two white boys, one of whom had been her partner several times before. After she attempted suicide with an overdose of sleeping pills and spent nine days in a local hospital, she was diagnosed as 'a psychopathic personality'. When Joyce's father accused the two white boys of rape, she refused to press the charges against them, and Prince George's police marked the case as 'closed and unfounded'."

This quoted excerpt suggests two relevant points which, in my view, effectively demolish plaintiff's argument. First, putting aside for the moment the three words which plaintiff urges were unfairly omitted, this passage is squarely grounded upon specific portions of the Court of Appeals opinion. It is true that there the court stated that at the party in Prince George's County, plaintiff had had intercourse with two white boys, "against her will".[4] This, however, was according to her own statement. The opinion goes on to report Joyce's attempted suicide, her stay in the hospital, her father's complaint to the Prince George's police concerning the claimed rape by the two white boys and Joyce's refusal to press the charges brought up by this complaint. The opinion also discusses Joyce's "resistance" or "lack of consent" to have consisted of removing the boy's "hands from her body several times". In such circumstances, I believe it to have been fair and accurate reporting on the part of defendant to omit the alleged crucial words "against her will". Put very simply, plaintiff's refusal to press these very charges and the disposition of the Prince George's County police, not to mention voluminous other references in the opinion, fully support the article's inference that plaintiff willingly engaged in sexual intercourse with two white boys in Prince George's County.

Unfortunately for plaintiff's position here, there is much more in the opinion of the Court of Appeals to support any implication or expression in the August 6 article to the effect that she was sexually promiscuous. No useful purpose will be served by reciting in detail the some fourteen or more references to such sad and embarrassing effect in the court's opinion. One brief illustration is typical and illustrative of these many references, all in support of the Time article's report that there was evidence of promiscuity on plaintiff's part. It is said, for example, in the court's opinion that:

> "These facts included the statements of the prosecutrix to Detective Sergeant Wheeler of the Prince George's County police that during the preceding two years she had had numerous

---

4. 212 A.2d at page 104 (second column of page).

acts of sexual intercourse with a large number of boys and men, many of whom were unknown to her, * * * " 5

■ Simply put, this and other references in the court's opinion are fairly susceptible of being reported as they were in the August 6 article. Thus, I find that there are ample references to facts and circumstances supporting the implication complained about that plaintiff "voluntarily had sexual intercourse" with a number of men.[6]

■ Clearly, therefore, defendant has a complete defense to plaintiff's claim of libel. The question remains as to whether plaintiff's separately stated claim of invasion of privacy can prevail against defendant's asserted privilege. I conclude that it cannot. Preliminarily, it might be observed that in New York, " * * * the right of privacy rests solely in statute. * * * " Gautier v. Pro-Football Inc. et al., 304 N.Y. 354, at page 358, 107 N.E.2d 485, at page 487 (1952), and plaintiff has not pleaded or suggested any New York statute on which her claim might rest. E. g. Article 5 of the New York Civil Rights Law, 8 McKinney's Consol.Laws of N.Y., Sections 50 and 51. Indeed, she could not sensibly do so in that the New York statute limits the right of privacy to protection as against advertising or trade appropriations only. It also might be argued that Section 74 by its terms is broad enough to bar any claim of invasion of privacy as well as more traditional claims of defamation.[7] But plaintiff specifically alleges in her complaint that, " * * * defendant has violated plaintiff's rights of privacy as recognized by the State of Maryland". Although plaintiff's counsel has submitted no Maryland statutes or cases on the point, my researches indicate that there is no Maryland statute specifically creating or recognizing a cause of action for invasion of the right to privacy. Nevertheless, I will assume that the Maryland courts would recognize a common law right of privacy; certainly Maryland is not one of those states whose courts have expressly refused to recognize such a right. See Prosser on Torts, 2d Ed., at pages 636–37. Further, notwithstanding my strong doubts that they would or should do so under the circumstances of this case, I will assume *arguendo* that the New York courts would look to Maryland law to test the validity of plaintiff's claim in the face of defendant's asserted privilege. Having made such assumptions, I am convinced that the Maryland courts would rule that the privilege would prevail.

To begin with, as Dean Prosser puts it, " * * * it is probable that privacy does not prohibit publication under circumstances which would be privileged under the law of defamation". Ibid., page 642, fn. 97. As already observed, defendant's August 6 article was privileged under the New York statute. Beyond this, the courts in England and this country have long recognized that "inconveniences" to private persons involved in litigation are more than counterbalanced by the public interest in full disclosure of court proceedings. The King v. Wright, 101 Eng.Rep. 1396, at page 1399 (1797); Salisbury v. Union and Advertiser Co., 45 Hun 120 (5th Dept. 1887); Cowley v. Pulsifer, 137 Mass. 392 (1884); Lee v. Brooklyn Union Publishing Co., 209 N.Y. 245, 103 N.E. 155 (1913); Prosser on Torts, 2d Ed., at pages 642 et seq. Thus, persons such as plaintiff who become associated, even unwittingly, with crime or other interesting events become in effect public figures at least for a time; " * * * until they have reverted to the lawful and unexciting life led by the great bulk of the community, they are subject to the priv-

5. 212 A.2d at page 114.

6. See page 4 of the brief of counsel for plaintiff.

7. It is to be noted, however, that Section 74 does not mention the right of privacy and specifically only refers to "libel".

Moreover, since New York limits protection of the right of privacy to trade or advertising appropriations, it must be inferred that Section 74 was intended to embrace only traditional defamation claims.

ileges which publishers have to satisfy the curiosity of the public as to their leaders, heroes, villains and victims." Restatement of Torts, Section 867, Comment c.

Consideration of these principles, it seems to me, leads one back to determination of essentially the same questions posed by defendant's defense to plaintiff's libel claim. Concededly, the privilege to publish newsworthy events, including judicial proceedings, is not unlimited. Having determined, however, that the August 6 article is a fair and true report of the Court of Appeals opinion and that thus defendant has a complete defense to the libel claim, I am constrained to conclude that the same determination establishes the common law privilege in bar of plaintiff's claim of invasion of privacy. In short, upon the facts of this case at least, I am satisfied that any right of privacy which the courts of Maryland might recognize cannot prohibit publication " * * * under circumstances which would be privileged under the law of defamation".[8]

Defendant is entitled to judgment on the pleadings dismissing both of the claims alleged in plaintiff's complaint. An order and judgment should be settled accordingly.