**Kenneth H. SIMOS, Petitioner,**

v.

**Ramon GRAY, Warden of the Wisconsin State Prison, Respondent.**

**Civ. A. No. 72-C-135.**

United States District Court, E. D. Wisconsin.

April 5, 1973

---

Nathaniel D. Rothstein, Milwaukee, Wis., for petitioner.

Thomas J. Balistreri, Asst. Atty. Gen., Madison, Wis., for respondent.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

The petitioner, Kenneth H. Simos, has filed a habeas corpus petition challenging his state conviction for burglary on the ground that the state failed to disclose material evidence helpful to his defense. The same challenge was presented to the Wisconsin Supreme Court on direct appeal. Simos v. State, 53 Wis.2d 493, 192 N.W.2d 877 (1972). Since petitioner has not raised any new legal or factual issues here, I find that his state remedies have been exhausted, and that

pursuant to 28 U.S.C. § 2254 this court has jurisdiction over the constitutional questions presented. Reaching the merits, I conclude that the evidence should have been disclosed and that its suppression so likely affected the result in this case that petitioner's conviction cannot stand.

## I

The parties have stipulated to the following facts: On Thanksgiving night, 1969, Benjamin and Dorothy Radcliffe, while returning from a visit with friends, noticed a man and a woman crossing the street in front of them near their home. Upon entering their home, they found they had been burglarized. A neighbor confirmed that the couple crossing the street had left the Radcliffe's home moments before. The Radcliffes summoned the police at once, but no suspects were found nor any action taken.

More than six weeks later the Radcliffes first viewed photographs from the police files. They promptly identified petitioner as the man crossing the street in front of them that night, and from that time forth they never waivered in their identification. At the trial, no other witnesses were able to identify petitioner. All attention focused on the reliability of the Radcliffes' identification. Counsel for both sides stressed the factors which bore on the Radcliffes' opportunity to observe the couple on the night of the robbery. The State emphasized, for instance, that the couple crossed within fifteen feet of the Radcliffes' car and within the beam of its headlights; petitioner's court-appointed counsel emphasized that there was no other source of light and that the car and the couple were moving. The thrust of the Radcliffes' testimony was that they had had an adequate opportunity to observe the couple. Petitioner's counsel also asked Benjamin Radcliffe if he had ever doubted his identification of petitioner, and Radcliffe answered that he had not. The petitioner, who had been convicted of burglary in the past, did not testify.

After the jury found the petitioner guilty in what the trial judge noted was a close case, petitioner discovered two police reports of the Milwaukee Police Department which he had never known about. The first report indicated that on the night of the robbery the Radcliffes declined to view photographs, stating that they were sure they could not identify the couple who crossed in front of them moments before. The second indicated that five days after the robbery Benjamin Radcliffe reported to police that a neighbor and he had again seen the couple and the automobile seen on the night of the robbery. He described the automobile for the police, but upon checking its license number, the police found that it belonged to a person who they were satisfied was not involved in the robbery and who evidently had no connection with petitioner.

Both reports also contained physical descriptions of the man seen. According to the first report, the man was twenty to twenty-two years of age, six feet in height, one hundred ninety-five pounds, with a husky build and a light complexion. The second report was similar indicating that the man had messy and very curly dark brown hair with long sideburns and was perhaps sixteen to eighteen years of age. At the time in question, petitioner was twenty-seven years of age, six feet in height, one hundred fifty pounds with a slim build and straight black hair.

Petitioner's counsel then moved the trial judge for a new trial. When that motion was denied, he appealed unsuccessfully to the Wisconsin Supreme Court. Petitioner's female codefendant was tried after the reports were revealed and was acquitted.

## II

I approach the issue in this case cognizant of the careful attention given it by the trial judge and the Wisconsin Supreme Court. The trial judge in particular was in a better position than I to determine whether the suppression of the evidence actually caused petitioner

substantial prejudice. The great difficulty law enforcement officials encounter in resolving burglaries such as this also exerts a sobering influence over any tendency to reverse when the innocence of the accused has not been demonstrated. See Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. of Chi.L.Rev. 142 (1970–71). The interests in finality of litigation are likewise significant.

Such considerations, however, do not dispel my duty to re-examine the issue presented in light of present constitutional doctrine and the policies underlying that doctrine. It is too late to argue in this forum that the right of habeas corpus is not worth the price, however high, society pays for it.

■ The United States Supreme Court has made it clear that the State's failure to disclose evidence helpful to the defense raises a due process issue of constitutional dimensions, properly the subject of a petition for habeas corpus. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady* the Court declared:

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment * * *." Id. at 87, 83 S. Ct. at 1197.

Due process imposes this duty on the State primarily because of the imbalance of resources between the State and the typical defendant. Traynor, Ground Lost and Found in Criminal Discovery, 39 N.Y.U.L.Rev. 228 (1964); Duty of the Prosecutor to Disclose Exculpatory Evidence, 60 Col.L.Rev. 868 (1960).

Recently federal courts have required disclosure even though defense counsel did not request it and even though the evidence was equally available to him. Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968); United States v. Poole, 379 F.2d 645 (7th Cir. 1967); United States ex rel. Meers v. Wilkins, 326 F.2d 135 (2nd Cir. 1964); Barbee v. Warden, Maryland Penitentiary, 331 F.2d 842 (4th Cir. 1964). The decisions reflect the evolving belief that a criminal trial should be more a quest for truth than a sporting event where counsel's oversight is fatal. Giles v. Maryland, 386 U.S. 66, 102, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967) (Fortas, J., concurring); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Levin v. Katzenbach, 124 U.S.App.D.C. 158, 363 F.2d 287 (1967); Ingram v. Peyton, 367 F.2d 933, 936 (4th Cir. 1966).

■ This evolving belief also helps to explain the parallel evolution in the standard for determining when the failure to disclose evidence necessitates reversal. At one time convictions were generally reversed only upon a showing that the prosecutor acted in bad faith in, for example, intentionally suppressing evidence. Reversal was believed necessary to maintain the integrity of the judicial process and to deter prosecutors from further suppression. Suppression caused by negligence was less likely to be deterred, so little purpose was served by reversing because of it. Whether the suppression of the evidence was likely to have prejudiced the defendant was not emphasized. The more modern standard shifts attention from whether the prosecutor's conduct was unsportsmanlike to whether the result would have been different if the evidence had been disclosed. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Note, 74 Yale L.J. 136, 138–39 (1964). In 1961 Judge Friendly described the relation between these standards which case law appeared to reflect:

" * * * the required showing of prejudice [seems somewhat] to vary inversely, with the degree to which the conduct of the trial has violated basic concepts of fair play. * * *" Kyle v. United States, 297 F.2d 507, 514 (2nd Cir. 1961).

In short, the worse the conduct of the State, the less the prejudice to the accused needed for reversal.

■ These principles guide my approach to the issue presented here. Since petitioner's counsel never requested the prosecutor to disclose evidence and since petitioner does not claim that the State acted in bad faith, prejudice needs to be shown. Since I conclude below that the State had a duty to disclose the police reports, less prejudice is required than if the evidence was first discovered by either party after trial.

The Wisconsin Supreme Court never reached the question of the degree of prejudice necessary for reversal in this case. In finding that the district attorney had no duty to disclose the police reports, the Court emphasized that the reports did not necessarily demonstrate that Benjamin Radcliffe's testimony was false. His testimony could, after all, be taken to mean that he had no doubt that petitioner was the man who crossed the street in front of him *after he saw petitioner's picture.*

■ Had the suppressed statements disproved Benjamin Radcliffe's testimony, the long established rule which prohibits a prosecutor from allowing false evidence to go uncorrected would apply and would require reversal even in the absence of prejudice. Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). But this long established duty to correct false evidence is not the limit of the modern prosecutor's obligations. At least since *Brady*, prosecutors have been required to disclose all evidence in their possession "favorable to the accused" bearing on the accused's guilt or the appropriate sentence.

■ Seizing upon the choice of words in *Brady*, the Wisconsin Supreme Court further held that the evidence suppressed in this case was not subject to the *Brady* duty because it was not "exculpatory." Simos v. State, 53 Wis.2d 493, 497–498 n. 5, 192 N.W.2d 877 (1972). Evidently the Wisconsin Court believed evidence like the police reports was not "exculpatory," a word defined by Webster's dictionary to mean "tending to [free from blame]" because it bore primarily on the reliability of Benjamin Radcliffe's testimony and therefore bore on petitioner's guilt only indirectly. Viewing the remedial mandate of *Brady* less narrowly, I do not believe the direct-indirect distinction is crucial. Many other courts have applied the prosecutor's duty to what could be termed rebuttal evidence, i. e., evidence tending to affect the weight or credibility of the evidence used against the accused.* Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); Levin v. Katzenbach, 124 U.S. App.D.C. 158, 363 F.2d 287 (1966); Link v. United States, 352 F.2d 207 (8th Cir. 1965); Thomas v. United States, 343 F.2d 49 (9th Cir. 1965); United States v. Maroney, 319 F.2d 622 (3rd Cir. 1963); People v. Rosario, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), cert. denied 368 U.S. 866, 82 S. Ct. 117, 7 L.Ed.2d 64 (1961); People v. Savvides, 1 N.Y.2d 554, 154 N.Y.S.2d 885, 136 N.E.2d 853 (1956); Commonwealth v. Smith, 417 Pa. 321, 208 A.2d 219 (1965). See also Griffin v. United States, 336 U.S. 704, 709, 69 S.Ct. 814, 93 L.Ed. 993 (1949) (implying that the prosecutor's duty applies to admissible evidence). Indeed commentators and some courts have pointed out that adherence to the policies underlying the decision in *Brady* would require disclosure of all material evidence which may help the accused not just in trying his case but in preparing for trial as well.

---

* The case law before *Brady* which dealt with the limited duty of the prosecutor to disclose evidence imposed the same duty of disclosure for rebuttal evidence as for evidence directly exculpatory. The opinion of the court in *Brady* cited several of these cases with approval and did not suggest that the new duty being declared would distinguish between types of evidence favorable to the accused. Brady v. Maryland, 373 U.S. 83, 86–87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed. 2d 9 (1956).

Traynor, Ground Lost and Found in Criminal Discovery, 39 N.Y.U.L.Rev. 228, 244 (1964); Application of Burwell, 236 F.2d 770, 774 (9th Cir. 1956).

Requiring disclosure of rebuttal evidence like the police reports in this case is surely consistent with the goals of offsetting the imbalance in resources and assisting the search for truth. Justice Fortas' remark in Giles v. Maryland, 386 U.S. 66, 98, 100, 87 S.Ct. 793, 809, 810, 17 L.Ed.2d 737 (1967), applies with even greater force here:

> " * * * No respectable interest of the State is served by its concealment of information which is material, generously conceived, to the case, including all possible defenses.
>
> \* \* \* \* \* \*
>
> " * * * The State's pursuit is justice, not a victim. If it has in its exclusive possession specific, concrete evidence which is not merely cumulative or embellishing and which may * * * be of material importance to the defense—regardless of whether it relates to testimony which the State has caused to be given at the trial—the State is obliged to bring it to the attention of the court and the defense. \* \* \* "

A prosecutor who is fearful of disclosing evidence or uncertain of his obligation to do so is free to seek the guidance of the trial court:

> "As we see it, the prosecution should disclose to the defense such information as it has that may reasonably be considered admissible and useful to the defense in the sense that it is probably material and exculpatory and where there is doubt as to what is admissible and useful for that purpose, the trial court should decide whether or not a duty to disclose exists." State v. Giles, 239 Md. 458, 212 A.2d 101, 109 (1965).

To an extent, the State will be protected from oversights of the police or prosecutor by the need for prejudice as a prerequisite for reversal. Indeed, the fact that the suppressed evidence tends to rebut the State's case rather than exculpate the accused directly may justify raising the degree of prejudice needed for reversal.

Difficult constitutional questions remain to be solved in this area. For instance, I hesitate to endorse the requirement that the State disclose all information falling into its hands which may tend to cast doubt on the credibility of its witnesses. The specter of detectives forced to detail the family skeletons, the shortcomings, and the misadventures of witnesses whom they may have known throughout their lives, even though the information may bear heavily on the witness' trustworthiness, suggests the weaknesses of such a blanket approach. In this case, however, the suppressed evidence which was obviously material and important bore not just upon the witness' general trustworthiness but bore firsthand upon the reliability of his specific testimony.

Perhaps the best approach on an application for collateral relief when material evidence has been negligently suppressed is not to center on the scope of the State's duty but to recognize that the duty to disclose extends to all evidence which would have helped the defendant and then to center on the fairness of upholding the defendant's conviction despite the suppression. One difficulty with this approach is that the degree to which the suppression of evidence prejudiced the accused is not easy to determine. Just as the prosecutor is not in a position to know at the time of trial what will be helpful to the accused, Dennis v. United States, 384 U.S. 855, 875, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), so the reviewing court is not in a position to know what weight the jury would have given to evidence had it been disclosed. Note 42 N.Y.U.L.Rev. 76 (1964). But to define the State's duty by distinguishing between types of helpful evidence, some of which must be disclosed and some of which need not be, will not encourage officials of the State to disclose all helpful evidence which they know to be of great importance.

■■ Having concluded that the police reports should have been disclosed, I return to the question of the appropriate standard of prejudice. The harmless error standard used in other contexts is apparently considered too low in light of the high risk of inadvertent suppression by the police or prosecutor who are often immersed in detail during the hectic days before trial. United States v. LaVallee, 344 F.2d 313 (2nd Cir. 1965); Kyle v. United States, 297 F.2d 507, 513–515 (2nd Cir. 1961). See Chapman v. California, 386 U.S. 18, 22 (1967). The controversy is whether it is enough that the suppressed evidence "might reasonably" have changed the outcome of the trial or whether it is necessary that the evidence "would probably" have changed the outcome. Levin v. Katzenbach, 124 U.S.App.D.C. 158, 363 F.2d 287 (1966); Comment, Criminal Discovery Implications of the False Evidence and Suppression of Evidence Cases, 34 Tenn.L.Rev. 354 (1967). As implied above, I believe the choice between these standards may properly turn on other characteristics of the case such as the culpability of the State, the type of evidence suppressed, the presence or absence of a request for the evidence, and the availability of the evidence to diligent defense counsel. In this case the cumulative effect of the suppression of the two police reports satisfies even the highest standard. Indeed, had the State only disclosed the statement of the Radcliffes on the night of the crime, to the effect that they could not identify the couple they had just seen, it seems probable that the jury would have entertained a reasonable doubt about petitioner's guilt in view of the lack of other evidence and the common belief that the impression most recent in time to the observation is the more reliable. See Whitmer, Psychology in Law, c. 9, Gray et al., Psychology in Use 242 (2nd ed. 1951). Though comparison with the facts of other cases is of questionable value, a similar result was reached in People v. Hoffner, 208 Misc. 117, 129 N.Y.S.2d 833 (Queens County Ct. 1952), where a new trial was ordered because it was not disclosed that a witness who identified the accused in court was not able to identify him earlier at a lineup. The acquittal of petitioner's female co-defendant after the suppressed evidence had been disclosed does nothing to dispel my belief that the suppression of the police reports prejudiced petitioner severely. Due process demands that he be given a new trial.

It is therefore ordered that the petition for writ of habeas corpus be and it hereby is granted. Execution of the writ will be stayed for a period of thirty days to allow the respondent to appeal or to seek a new trial. If at the end of that period, the respondent has not appealed or sought a new trial, the writ will be executed and petitioner will be released.

