Kenneth Ray CASTLEBERRY, Petitioner,

v.

Richard CRISP, Warden, Oklahoma State Penitentiary, McAlester, Oklahoma, Respondent.

No. 75-C-422-C.

United States District Court, N. D. Oklahoma.

May 6, 1976.

Paul D. Brunton and Ronald H. Mook, Tulsa, Okl., for petitioner.

Kay Karen Kennedy, Asst. State Atty. Gen., Oklahoma City, Okl., F. L. Dunn, III, Tulsa, Okl., for respondent.

## ORDER

COOK, District Judge.

The Court has before it for consideration a petition for Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 by Kenneth Ray Castleberry. Petitioner attacks the validity of the judgment and sentence rendered by the District Court of Tulsa County, State of Oklahoma, in Case Nos. CRF–72–359, CRF–72–360 and CRF–72–361. After a trial by jury, petitioner was found guilty as to each charge of the crime of murder and his punishment was fixed at confinement in the state penitentiary for life as to each charge. The judgment and sentence were affirmed on direct appeal, *Castleberry v. State*, 522 P.2d 257 (Okl.Cr. 1974). Petitioner subsequently appealed to the United States Supreme Court which denied certiorari. *Castleberry v. State*, 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974).

Petitioner demands his release from custody and as grounds therefor claims that he is being deprived of his liberty in violation of his rights under the Constitution of the United States of America. In particular, petitioner claims:

"1. [T]he State Court's admission of certain incriminatory statements made by the petitioner were procured in violation of his Fifth Amendment privilege against self-incrimination and thereby denied petitioner due process of law under the Fifth and Fourteenth Amendments to the United States Constitution.

"2. [P]etitioner was denied due process of law under the Fifth and Fourteenth Amendments to the United

States Constitution by the prosecution's failure to stipulate to the admissibility of favorable polygraph results for the limited purpose of showing that incriminatory statements made by petitioner were procured in violation of his Fifth Amendment privilege against self-incrimination.

"3. [T]he prosecution's failure to produce evidence favorable to the accused violated petitioner's right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution."

On March 19, 1976, oral arguments were presented in regard to petitioner's claims. At that time Mr. Ron Mook, on behalf of petitioner, stated that he considered "the question of polygraph at this time moot," and presented no arguments going to this issue. Based upon the Court's having determined that petitioner's second claim in regard to the granting of Habeas Corpus relief based upon admissibility of polygraph results is without merit, this contention will not be given further consideration.

Petitioner alleges in his third claim, as stated, that the prosecution's failure to produce evidence favorable to the accused violated petitioner's right to due process of law. Based upon a thorough examination of the briefs filed herein, a reading of the transcript of trial and hearing on motion for new trial and the law applicable to the production of exculpatory evidence, the Court has determined that petitioner's contention in this regard merits further consideration.

Petitioner asserts that the prosecution failed to provide the defense exculpatory information indicating someone other than the defendant may have committed the crime. From an examination of the entire transcript it would appear that prior to trial the police had a statement, probably written but unsigned, by one Michael Roger Lee Cozart. According to Cozart's testimony at the Motion for New Trial, prior to trial he told the police that on the evening of the day the bodies were discovered, February 16, 1972, he saw one Jackie Dean Tandy in front of Tandy's residence, which was a few blocks from the murder scene, crying and shaking. In addition, Cozart stated that Tandy had blood on his clothing. According to the affidavit of the police officer who interviewed Cozart, attached to the Supplemental Response filed herein, Cozart did not make any statement in regard to seeing blood. Since Cozart indicated under oath that he made such a statement, this question would appear to require an evidentiary hearing.

In addition, evidence was presented at the Motion for New Trial which indicates that one Larry Lowther telephoned the police in regard to his suspicions that Tandy had committed the murders. Lowther was with Cozart on the evening of February 16th, 1972, and testified he also saw a brown spot on Tandy's pants that looked like blood and that Tandy had a knife in his boot. Lowther further stated that Tandy was shaking badly and acting suspiciously. The police not only apparently had a record of Lowther's phone call, but Lowther accompanied Cozart to the police station. The record does not reflect the content of any discussions Lowther may have had with the police.

In addition one Joyce Anglen, who lived next door to Tandy, observed Tandy acting strangely and shaking, and instructed her husband to call the police and tell them she thought Tandy had committed the crime. Her husband did call the police and apparently informed them of same. Further, Mrs. Anglen talked to the police the next day in her back yard concerning her suspicions. Presumably the police made some record of this conversation. Mrs. Anglen further stated that "as a result of the conversation had with" the police she helped Tandy's wife look for a knife that was apparently missing from the Tandy home and never found. The police, therefore, likely have some reports in regard to the missing knife. (Evidence presented at trial indicated that the murder weapon was a knife. No knife was produced at trial.) The evening of February 16, 1972 the police

arrested Tandy presumably based upon probable cause to believe he committed the murders. It appears from the testimony at the Motion for New Trial that the police also had a written statement by Tandy. He was released shortly thereafter.

At the hearing on the motion for new trial, the defense called two additional witnesses. At the time of trial the police did not know of these witnesses, but had the defense been given the initial information in regard to Tandy, it may be presumed they could have located these additional witnesses for trial, since they were able to do so for the hearing on the motion for new trial. Jimmy Lee Mize testified he saw Tandy in January or February at Tandy's residence a few blocks from the murder scene and that Tandy had blood on his clothes from the knees down and on his boots. Mize was not allowed to testify in regard to a statement allegedly made by Tandy because Oklahoma did not recognize statements against penal interest as an exception to the hearsay rule. An offer of proof was made, however, to the effect that Tandy told Mize's father that he had been at the Castleberry house to "hit" it and got in some trouble, and Tandy said he needed to get out of town. The father of Jimmy Lee Mize, James Martin Mize, testified that Tandy appeared the "day before the news broke on Castleberry" and that Tandy had blood on him and he said he was in trouble and needed to get out of town.

None of the above information was made available to the defense at time of trial.

■ The United States Supreme Court has made it clear that the prosecution's failure to disclose evidence materially favorable to the defense raises a due process issue of constitutional dimensions, properly the subject of a petition for habeas corpus. *Simos v. Gray*, 356 F.Supp. 265 (E.D.Wis. 1973). In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Court declared:

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or

to punishment, irrespective of the good faith or bad faith of the prosecution."

Clearly the rationale of *Brady* focuses not on misconduct of the prosecutor but on harm to the defendant. As noted by the court in *Levin v. Clark*, 133 U.S.App.D.C. 6, 408 F.2d 1209 (1967), the State's facilities for discovering evidence are usually far superior to the defendant's.

"This imbalance is a weakness in our adversary system which increases the possibility of erroneous convictions. When the Government [or State] aggravates the imbalance by failing to reveal evidence which would be helpful to the defendant the constitution has been violated. The concern is not that law enforcers are breaking the law but that innocent people may be convicted." *Levin v. Clark, supra.*

■ There is, of course, no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case. *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1971). *Brady* does not sanction a "fishing expedition." *United States v. Burnett*, D.C.Super.Ct., Cr. No. 73588–73, April 23, 1974. It does not require "the prosecution to prepare the case for the defense." *United States v. Gleason*, 265 F.Supp. 880 (S.D.N.Y.1967). Nor can the accused search the prosecutor's files for anything potentially favorable. *United States v. Washington*, 150 U.S.App.D.C. 68, 463 F.2d 904 (1972).

■ A prerequisite to relief for the nondisclosure of required information is that the defense did not have independent knowledge of and access to the evidence in question. *Smith v. United States*, 375 F.Supp. 1244 (E.D.Va.1974); *Rosenberg v. United States*, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1958); *Thomas v. United States*, 343 F.2d 49 (9th Cir. 1965). An examination of the record in the case at bar indicates that although the names of Mike Cozart, Larry Lowther and Joyce Anglen's husband were endorsed by the State on the information, Mike Cozart refused to talk

with defense counsel, the Anglens had moved and left no forwarding address, and defense counsel were similarly unable to locate Larry Lowther. Therefore, not only was the defense not given any indication of the potential significance of these witnesses, but the efforts of defense counsel to discover on their own the content of their possible testimony was fruitless. In *Jackson v. Wainwright*, 390 F.2d 288 (5th Cir. 1968), the State contended it met its duty when it revealed a witness' name and address to the defendant's attorney before the trial and by subpoena produced her at trial. But the court noted the attorney had not been given a hint as to the exculpatory nature of the witness' possible testimony and the court held:

"A defense lawyer cannot be expected to assume that a witness subpoenaed by the State, even if not called to testify, has evidence favorable to the defense."

Furthermore, as recognized in *United States v. Poole*, 379 F.2d 645 (7th Cir. 1967), even if defense counsel might have been more diligent, the defendant should not suffer for the mistakes of his counsel.

To make out a case under *Brady*, as stated by the court in *Lewis v. State*, 304 F.Supp. 116 (W.D.Okl.1969), petitioner must state facts showing:

"(1) Evidence which is favorable to him,

(2) Such evidence was in the possession of the prosecution at some time during Petitioner's trial,

(3) The evidence was suppressed and not made available to the Petitioner on his request therefor, and,

(4) The evidence was material either to the issue of Petitioner's guilt or punishment."

While the courts in *Brady* and *Lewis* considered suppression after a *request*, more recent federal court decisions have required disclosure even though defense counsel did not request it. *Smith v. United States*, supra; *Simos v. Gray*, supra; *United States v. Poole*, supra. The decisions reflect the evolving belief that a criminal trial should be more a quest for truth than a sporting event where counsel's oversight is fatal.

*Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967) (Fortas, J., concurring); *Levin v. Katzenbach*, 124 U.S.App. D.C. 158, 363 F.2d 287 (1967); *Ingram v. Peyton*, 367 F.2d 933 (4th Cir. 1966). In the case at bar, the Court notes that petitioner asserts that "timely pre-trial motions were filed in the trial court to require the prosecution to provide evidence, under state law, especially that which would tend to negate guilt and upon the prosecution's statements that no such evidence existed the case proceeded to trial." Respondent does not contest this allegation. As noted by Justice Marshall in the dissent in *Moore v. Illinois*, supra, "[a] motion for extensive discovery placed the prosecution on notice that the defense wished to see all statements by any witness that might be exculpatory. The motion served 'the valuable office of flagging the importance of the evidence for the defense and thus impos[ing] on the prosecutor a duty to make a careful check of his files.'" *United States v. Keogh*, 391 F.2d 138 (2nd Cir. 1968).

The issue of intentional versus unintentional suppression adds another variable to the *Brady* question. Petitioner alleges that the failure to disclose certain exculpatory evidence known by the prosecution was not an omission by the state, but an affirmative misrepresentation when in response to a defense request to produce any and all exculpatory evidence in his possession or control, the prosecutor stated: "All of the evidence I have shows that he is guilty, your Honor." The courts in *United States v. Keogh*, supra; *Kyle v. United States*, 297 F.2d 507 (2nd Cir. 1961); *Grant v. Alldredge*, 498 F.2d 376 (2nd Cir. 1974) and others, suggest that the burden on the criminal defendant to demonstrate prejudice resulting from the non-disclosure of evidence in the government's possession should be less where it is found that the government was negligent or has deliberately suppressed requested information. *Smith v. United States*, supra. In *United States v. Harris*, 462 F.2d 1033 (10th Cir. 1972) the Tenth Circuit stated:

"In cases involving the deliberate suppression of exculpatory evidence the

courts will not inquire into the elusive question of actual prejudice affecting the result of a criminal prosecution. But where . . . the denied evidence results from what might be termed unintentional and passive (though not excusable) nondisclosure a different test is indicated. The test must be whether the trial was merely imperfect or was unacceptably unfair."

While it is relevant to determine whether defense counsel had independent knowledge of the evidence, whether a request was made, and whether the evidence was intentionally or unintentionally withheld, the basic test is whether the undisclosed evidence was so important that its absence prevented the accused from receiving his constitutionally-guaranteed fair trial. As stated by the court in *United States v. Hibler*, 463 F.2d 455 (9th Cir. 1972):

"That defense counsel did not specifically request the information, that a 'diligent' defense attorney might have discovered the information on his own with sufficient research, or that the prosecution did not suppress the evidence in bad faith, are not conclusive; due process can be denied by failure to disclose alone."

Courts have further been faced with determining whether the information suppressed is "favorable" and "material" within the meaning of *Brady*. As stated by the court in *Levin v. Clark*, supra:

"The question is what kinds of evidence must the prosecutor reveal? Various courts have talked about 'favorable' evidence, 'material' evidence 'pertinent facts to (the) defense,' 'information impinging on a vital area in (the) defense,' evidence vital 'to the accused persons in planning and conducting their defense,' and 'evidence that may reasonably be considered admissible and useful to the defense.'"

The court in *Levin* then held that without excluding any of these relevant considerations, it would focus upon the ultimate possibility of harm to the defendant—the possibility of erroneous conviction—and the standard would be in terms of whether the evidence "might have led the jury to entertain a reasonable doubt about [defendant's] guilt." In *Shuler v. Wainwright*, 491 F.2d 1213 (5th Cir. 1972) the court, quoting from *United States v. Miller*, 411 F.2d 825 (2nd Cir. 1969) stated:

"The test, however, is . . . whether . . . there was a significant chance that this added item, developed by skilled counsel as it would have been, could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction."

See also *United States v. Rosner*, 516 F.2d 269 (2nd Cir. 1975) and *United States v. Morell*, 524 F.2d 550 (2nd Cir. 1975). The court in *Smith v. United States*, supra, determined that "the question is whether, considering the use to which the undisclosed evidence might have been put, there is a reasonable possibility that such use could have affected the result reached at trial." According to the court in *United States v. Hibler*, 463 F.2d 455 (9th Cir. 1972), "the test is whether the undisclosed evidence was so important that its absence prevented the accused from receiving his constitutionally-guaranteed fair trial." The test to be applied according to the court in *United States v. Marrero*, 516 F.2d 12 (7th Cir. 1975), is simply whether the accused was insured of and accorded the genuine fairness to which he was entitled during the progress of the trial. In *United States v. Harris*, 462 F.2d 1033 (10th Cir. 1972), the Tenth Circuit similarly stated that "the test must be whether the trial was merely imperfect or unacceptably unfair." Several courts have recognized the possibility that "useful" or "helpful" information may be sufficient to meet the test of "materially favorable". *Smith v. United States*, supra; *Simos v. Gray*, supra. Furthermore, courts have recognized that the requirement of materiality should not be narrowly construed. As stated by Justice Fortas in the concurring opinion in *Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1966):

"No respectable interest of the State is served by its concealment of information which is material, generously conceived, to the case, including all possible defenses."

See also *Simos v. Gray*, supra. The court in *Levin v. Clark*, supra, in recognizing the difficulty of determining the effect the suppressed information might have had on a jury, stated:

"This standard requires speculation because there is no sure way to know how the jury would have viewed any particular piece of evidence. Nor is it possible to know whether revelation of the evidence would have changed the configuration of the trial—whether defense counsel's preparation would have been different had he known about the evidence, whether new defenses would have been added, whether the emphasis of the old defenses would have shifted. Because the standard requires this kind of speculation we cannot apply it harshly or dogmatically. In *Griffin v. United States* [supra] the Supreme Court directed us to consider 'whether it would not be too dogmatic, on the basis of mere speculation, for any court to conclude that the jury would not have attached significance to the evidence favorable to the defendant had the evidence been before it.' "

Courts have also grappled with the meaning of the word "evidence" as used in *Brady*. Justice Fortas noted in *Giles v. Maryland*, supra, that the State may not be excused from its duty to disclose material facts known to it prior to trial solely because of a conclusion that they would not be admissible at trial. Similarly in *United States v. Gleason*, 265 F.Supp. 880 (S.D.N.Y. 1967) the court held that "the prosecution's duty of disclosure as affirmed in *Brady*, cannot be limited to materials or information demonstrated in advance to be 'competent evidence.' " As noted in *Smith v. United States*, supra, "it may be sufficient that the undisclosed information, though not admissible into evidence, would have been somehow useful to the defense in structuring its case."

The Court recognizes that in a case where several eye witnesses identify a defendant as the perpetrator of a crime, or where the physical evidence clearly points to the guilt of a defendant, evidence indicating that someone else may have committed the crime would have to be almost conclusive in order to be material. However, in a case where the evidence pointing to guilt is more questionable, there is a greater likelihood that if evidence had been presented which indicated another individual committed the crime, the jury might have entertained a reasonable doubt. In the case at bar, the Court notes that there was almost a total lack of physical evidence to indicate defendant's guilt. (Evidence that a substance which might have been blood was found under two of defendant's fingernails which could not be identified as animal or human was certainly not substantial.) The most damaging evidence presented was defendant's confession which according to petitioner was psychologically coerced. (The Court does not rule on the voluntariness of the confession at this time.) The Court notes that based upon an examination of the evidence presented at trial and at the hearing on the motion for new trial, Judge Brett stated in the dissent in *Castleberry v. State*, 522 P.2d 257 (Okl. Cr.1974):

"[T]here was more testimony at [the hearing on motion for new trial] implicating one Jackie Dean Tandy with the commission of these homicides than was offered against the defendant at his trial."

It is clear that exculpatory evidence could have played a vital part in the defense presented and the ultimate determination of the jury. Absent the presentation of any exculpatory evidence on behalf of the defendant, the evidence presented by the State could have taken on greater significance in the minds of the jury.

In *Grant v. Alldredge*, 498 F.2d 376 (2nd Cir. 1974), the court ruled that suppression of information which might have led the defense counsel to evidence showing someone else may have committed the crime deprived defendant of his constitutional rights. In *Grant*, the prosecutor failed to inform defense counsel that an eye witness to the robbery initially identified a man named Walsh from a picture "spread" as the perpetrator of the crime. Pursuant to a

defense request for all exculpatory evidence, the prosecutor had informed defense counsel that the witness was unable to identify the defendant Grant from a spread of fourteen pictures, but failed to inform the defense that Walsh's picture had been selected as the one most resembling the robber. (The court noted that the FBI must have known that Walsh's physique approximated the robber's because his height and weight had been marked on the back of the photo.) In *Grant* the government contended, as does the State in the case at bar, that the information was not given the defense "because the investigators were satisfied to 'wash out' Walsh as a suspect." After trial it was learned that city police had previously questioned Walsh in regard to the robbery because his car fit the description of a car in the vicinity of the robbery. Although the court did not reach the issue of whether the federal authorities were responsible for knowledge contained in the files of the local police agency the court held:

"A full disclosure could have, indeed probably would have, led to defense discovery of all the information involving Walsh. That information, in the aggregate, could then have been used by Grant's attorney to support a theory that it was likely that Walsh had committed the crime. Such a defense, it seems to us, could have 'induced a reasonable doubt in the minds of enough jurors to avoid a conviction.'"

It may be impractical and unfair to leave to the prosecution the determination of whether evidence is materially favorable to an accused. Several courts have recognized both the need for impartial judicial determination of whether the evidence is exculpatory as well as the burden such a procedure places on the courts, and have established procedures to meet the need. For example, the court in *United States v. Eley*, 335 F.Supp. 353 (N.D.Ga.1972), set upon the following procedure for the Atlanta Division of the Northern District of Georgia:

"(1) The United States Attorney, upon request of an accused, shall permit the accused to inspect and copy any information in the possession of the prosecution which might be considered helpful to the accused's case.

(2) If the United States Attorney entertains a genuine doubt as to whether he must disclose certain information or questions the necessity of granting an accused pretrial discovery of certain information which must be disclosed, he may withhold such information from the accused. If he chooses to withhold such information, he shall notify the accused of the reason for this action and generally describe the information in question.

(3) If the accused, upon receipt of such notice from the United States Attorney, nevertheless desires discovery of such information, he shall so move in this court within ten days after arraignment or waiver thereof. . . . Should the accused so move, the court will order the prosecution to submit the information in question for in camera inspection and proceed to dispose of the controversy on its merits."

Subsequent to the oral arguments presented in this Court March 19, 1976, petitioner and respondent were given an opportunity to further brief the *Brady* issue. In the Supplemental Response filed by the Attorney General of Oklahoma on April 14, 1976, respondent asserts that petitioner's allegation in regard to the suppression of exculpatory evidence was not presented to the state appellate courts.

From a reading of the opinion rendered by the Oklahoma Court of Criminal Appeals, *Castleberry v. State*, 522 P.2d 257 (Okl.Cr.1974), it would appear that the court did not deal directly with the constitutional mandate of *Brady* but rather solely considered whether the statements taken during the investigation by police authorities were discoverable or fell within the category of 'work product' and were therefore not within the defendant's right of discovery as measured by State law. The

court was obviously faced with a monumental task in reviewing all the evidence, considering the extensive briefs, and ruling on the numerous propositions of error. This Court notes that petitioner raised eight propositions of error, and that reference to *Brady* was only made in subdivision E of the eighth proposition of error entitled: "An accumulation of irregularities prejudicial to defendant occurring at trial and during defendant's hearing on his motion for new trial, denied this defendant a fair and impartial trial and due process." Of the 188-page brief filed by appellant, only pages 183 through 188 touched on the issue here considered.

■ While this Court recognizes that 22 O.S.1971 § 749 does not provide for discovery of statements unless they are sworn statements, and further that the court in *State v. Truesdell*, 493 P.2d 1134 (Okl.Cr. 1972) provided that an accused is not entitled to discovery and inspection of unsworn statements of a prosecution witness in the possession of the State, such statute and the "work product" discovery rule cannot, of course, be applied in a manner which derogates a defendant's constitutional rights as propounded in *Brady*. Judge Brett in the dissenting opinion in *Truesdell* recognized that a defendant is not entitled to the "work product" of the prosecutor *"unless such item, or items, tends to negate the guilt of the accused."* In *Giles v. Maryland*, supra, the Supreme Court sent the case back to the Maryland Court of Appeals for a determination of what the State knew at trial in comparison to the knowledge held by the defense. The evidence in issue was a police report which the trial judge had ruled was "work product" and therefore not producible under Maryland's Rules of Procedure. In remanding the case, the Supreme Court expressed confidence that the Maryland Court of Appeals would reverse as unconstitutional a conviction in a trial that included suppression of evidence materially favorable to the defense.

■ This Court recognizes that in regard to exhaustion of state remedies all that is required is that the state courts have

a "fair opportunity" to consider a constitutional claim before federal habeas corpus is available. *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *United States v. Damon*, 496 F.2d 718 (2nd Cir. 1974). However, in light of the fact that the *Brady* issue appears to have been raised only in passing in the state court and since the case presents an important and vital constitutional question, it is the determination of the Court that the court of the State of Oklahoma should first have a clear opportunity to rule on the issue as requested by the Attorney General of the State of Oklahoma.

This Court adopts the reasoning in *United States v. Rundle*, 332 F.Supp. 30 (E.D.Pa. 1971) wherein the court stated:

"In the present case . . . there has not yet been a substantial investment of Federal judicial resources in the consideration of relator's petition; [an evidentiary hearing not having been held] further, if relator's petition is promptly considered by . . . state courts, he will in no way be prejudiced, nor will consideration of his claim be unfairly delayed. Without holding that 28 U.S.C. § 2254 *compels* this Court to decline to exercise its jurisdiction for failure to exhaust state remedies, I conclude that dismissal of the present application without prejudice will favor the interest of comity with state courts, without causing a significant sacrifice of judicial economy, or unfairly delaying consideration of petitioner's claim on the merits."

It is likewise the determination of this Court that petitioner's petition for writ of habeas corpus is dismissed without prejudice in order to permit the proper review by the State court.