Kenneth Ray **CASTLEBERRY**,
Petitioner-Appellee,

v.

Warden Mack H. **ALFORD** and the Attorney General of the State of Oklahoma, Respondents-Appellants.

No. 80–1972.

United States Court of Appeals,
Tenth Circuit.

Dec. 15, 1981.

Rehearing Denied Feb. 1, 1982.

Paul D. Brunton, Tulsa, Okl., for petitioner-appellee.

Charles S. Rogers, Asst. Atty. Gen., Deputy Chief, Crim. Div., Oklahoma City, Okl. (Jan Eric Cartwright, Atty. Gen. of Oklahoma, and Janet L. Cox, Asst. Atty. Gen., Oklahoma City, Okl., with him on the brief), for respondents-appellants.

Before McWILLIAMS and DOYLE, Circuit Judges, and TEMPLAR,* District Judge.

McWILLIAMS, Circuit Judge.

Kenneth Ray Castleberry, an Oklahoma state prisoner serving three concurrent life

\* Honorable George Templar, United States District Judge of the District of Kansas, sitting by

sentences for a triple murder, filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Oklahoma pursuant to 28 U.S.C. § 2254 (1976). Based upon the record as theretofore made in the several proceedings in the Oklahoma state courts, the district court concluded that Castleberry's "confession" had been induced by psychological coercion and was therefore involuntary, and that its admission into evidence at the state trial violated Castleberry's due process rights under the fifth and fourteenth amendments to the United States Constitution. The district court ordered that Castleberry be released unless he was afforded a new trial within 90 days. The district court entered a stay of its order, however, pending this appeal by the State of Oklahoma. We reverse.

Castleberry was charged in a state court in Tulsa, Oklahoma, with the murder of his wife and two children. A jury convicted Castleberry on all three charges, and he was given a life sentence on each conviction. On appeal, the Oklahoma Court of Criminal Appeals undertook an in-depth review of the case, including the issue of the voluntariness of Castleberry's confession, and affirmed Castleberry's conviction. *See Castleberry v. State*, 522 P.2d 257 (Okl.Cr.), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974). This state appeal was heard by a three-judge panel, and the affirmance was on a 2–1 vote, with one judge dissenting and one judge specially concurring. The concurring judge, however, was in complete accord with the majority opinion, and merely took the occasion to criticize the dissent.

Castleberry thereafter filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Oklahoma. That petition was dismissed, without prejudice, by the court, in order to permit Castleberry to exhaust his state

designation.

remedies. *See Castleberry v. Crisp*, 414 F.Supp. 945 (N.D.Okl.1976). The federal district judge specifically reserved the question of the voluntariness of the confession. *Id.* at 951.

Castleberry then collaterally attacked his conviction in the Oklahoma state courts, asserting that the prosecution had failed to disclose exculpatory evidence in its possession, in violation of the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This matter was heard by the judge who had presided at Castleberry's trial. The trial judge denied Castleberry's claim for relief based on an alleged violation of *Brady*, and, on appeal, such ruling again was affirmed by a 2–1 vote. *Castleberry v. State*, 590 P.2d 697 (Okl.Cr. 1979).[1]

Castleberry then initiated the present habeas action in federal district court. All parties concerned were in apparent accord that Castleberry had been afforded a full and complete hearing in the state courts. Accordingly, the district court did not hold an evidentiary hearing, but relied entirely on the voluminous record of the proceedings theretofore made in the state courts. As indicated, the district court concluded that Castleberry's confession was involuntary and that its admission at trial violated Castleberry's constitutional rights. The relief granted was either a new trial, or release.

The background facts surrounding the homicides and the action taken by the Tulsa police department in connection therewith are fully set forth in the two opinions of the Oklahoma Court of Criminal Appeals, and will be repeated here only to the extent necessary to facilitate an understanding of our disposition of the matter.

It was the prosecution's theory of the case that sometime during the early hours of February 16, 1972, Castleberry and his wife became involved in a heated argument over family finances and that such resulted

in his stabbing her to death. The prosecution further theorized that when the two children were awakened by the quarrel, Castleberry killed them too. According to the prosecution, Castleberry then went to work as usual, around seven o'clock a.m., and returned home around five o'clock p.m. After first entering the home, Castleberry went to a neighbor's house and asked that the police be called.

The defense contended that Castleberry did not kill his wife, or children, and that they were all alive when Castleberry left for work at seven o'clock a.m. on February 16. The defense theorized that sometime during the day, while Castleberry was at work, an intruder broke into the house and killed the three victims.

Castleberry's first contact with the police came shortly after the police responded to the neighbor's call on February 16. The police asked Castleberry general questions concerning his family and his activities on February 15 and 16. Castleberry was not detained.

The police next contacted Castleberry on February 17. He was taken to the police station and again questioned as to the events of February 15 and 16. Castleberry was at the police station for several hours, but then released. Thereafter, Castleberry went to Kansas for the funeral of his family, and did not return to Tulsa until February 22.

On February 22, after his return to Tulsa, Castleberry telephoned the Tulsa police and again was taken to the police station and questioned as to the events surrounding the murder, his relationship with his family, and the like. At the conclusion of the interview, Castleberry was allowed to leave.

On February 23, Castleberry again was contacted by the police. As two officers were taking Castleberry to the police station, a conversation ensued as to whether

---

1. The federal district court in the present proceeding concurred with the state court's disposition of Castleberry's rights as to any *Brady* material. This issue was not raised by either party in this appeal.

Castleberry would like to see a minister. Castleberry testified that the subject was initiated by the officers, whereas the officers said Castleberry first raised the matter. In any event, when Castleberry stated that he had no particular minister with whom he would like to talk, one of the officers suggested his own minister. Castleberry apparently agreed to speak to the minister, and the officers took Castleberry to see him.

After being introduced, Castleberry had a private conversation with the minister. Biblical passages, to the effect that if one confesses his sins, he will be forgiven, were read. Prayers followed, and Castleberry then left with the police officers.

According to the two police officers, Castleberry, for the first time, then stated that he must have been the one who killed his wife and children, but that he had absolutely no recollection of having committed the murders. The officers thereupon took Castleberry to his home, where the scene of the homicides was revisited. Castleberry then was taken to the police station, where he made a taped statement to the same effect as his earlier statement to the police, *i.e.*, that he must have killed his family but that he had no recollection of ever having done so.

At the outset, there is no suggestion that Castleberry was not given an adequate *Miranda* warning. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He apparently was given *Miranda* warnings on several occasions. Nor does Castleberry claim that he was subjected to any form of physical abuse. Such was also the conclusion of the trial court in the instant case. After describing the nature of the contacts between the police and Castleberry, the trial judge opined as follows:

> The foregoing recitation sets out the primary historical facts as to the sequence of events and the persons involved. At this level, there is no Constitutional infirmity; Petitioner was not subjected to grueling and prolonged interrogation, nor

was Petitioner physically abused; a visit to a minister or other party is, in itself, unobjectionable; and, a return to the scene of the crime, again, standing alone, is of no moment. But the question of whether Petitioner's will was overborne through psychological pressure is a subtle one, and these gross instruments are incapable of probing its depths. An examination of the details is necessary to discover the "totality of the circumstances" and the impact of those circumstances on Petitioner's will.

Although the district judge in the instant habeas corpus proceeding could not find any particular misconduct on the part of the police, he found that the conduct of the police resulted in an involuntary confession because of its peculiar impact on Castleberry. In this regard, the district judge noted that Castleberry was only 21 years of age, and a high school dropout with no previous police record. Castleberry's I.Q. was 96, which was described as low normal. The district judge was also influenced by the testimony of a defense witness, Dr. Salvatore Russo, a psychologist. Dr. Russo described Castleberry as a shy individual of average intelligence, who tended to be passive, dependent and submissive. Basing his ultimate ruling on the "totality of the circumstances," the district judge concluded that Castleberry's confession was involuntary, having been induced by psychological coercion, and, on that basis, ordered either a new trial, or release.

As indicated, the federal district court in the present proceeding did not hold any evidentiary hearing, all concerned being of the view that the question of the voluntariness of Castleberry's confession had been fully and fairly explored in the state courts. We agree. This particular issue was raised prior to trial, when Castleberry's counsel moved to suppress the purported confession on the ground that such was involuntary. After hearing, the motion was denied. During trial, counsel renewed the motion to suppress, which also was denied. The state

trial judge apparently was of the view that the confession was voluntary, although the question of voluntariness was still submitted to the jury under appropriate instruction. *See Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). On direct appeal, the Oklahoma Court of Criminal Appeals specifically considered, and rejected, the argument that Castleberry's confession was psychologically induced and, as such, involuntary. 522 P.2d at 268–69. In so holding, the Court of Criminal Appeals concluded, in effect, that there was sufficient evidence to support the trial court's determination that the confession was not the product of psychological coercion, but, on the contrary, was voluntary.

■ As above stated, the trial court's holding that Castleberry's confession was involuntary was based exclusively on a reading of the record as previously made in the Oklahoma state courts. In such circumstance, it is doubtful that in our review of the matter we are governed by the "clearly erroneous" rule.[2] In any event, even where a federal district court, having before it a record of the state court proceedings, in addition holds an evidentiary hearing to determine the voluntariness of a confession,

we are charged on review with the duty to examine the entire record and to make an independent determination on the matter. *Beckwith v. United States,* 425 U.S. 341, 348, 96 S.Ct. 1612, 1617, 48 L.Ed.2d 1 (1976); *Bell v. Patterson,* 402 F.2d 394, 396 (10th Cir. 1968).[3] Our duty in this regard is not foreclosed by the finding of a state court, or by the verdict of a jury. *Lisenba v. California,* 314 U.S. 219, 237, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941). In the instant case, our independent examination of the record, as made in the Oklahoma state courts, convinces us that the federal district court erred in overturning the state court's finding of voluntariness and in ordering Castleberry's retrial or release.

■ Whether a confession is voluntary, or involuntary, is frequently a mixed question of fact and law, although, in a given case, it may be purely a question of law, or of fact.[4] We are of the view that the question of the voluntariness of Castleberry's confession is essentially one of fact. In thus concluding, we are persuaded, first, by the fact that there was no particular misconduct on the part of the Tulsa police officers investigating the homicides. Such also was the view of the federal district

2. Fed.R.Civ.P. 52(a) provides:
   Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. It is a well-established rule that factual questions in habeas corpus proceedings should be determined by the district court and that its factual conclusions are binding on the court of appeals unless "clearly erroneous." There is an exception to the general rule, however, where some or all of the evidence before the district court was not the live testimony of witnesses, but instead transcripts and documents of the state proceedings. In such circumstance, the clearly erroneous rule will not apply with full force. *See Martinez v. Turner,* 461 F.2d 261, 264 (10th Cir. 1972).

3. Although we have a duty to make "an independent determination," there is some confusion among the circuit courts of appeals as to the proper standard of review in a federal habeas proceeding after a jury, a state trial court, and a state appellate court have each determined that the accused's confession was volun-

tarily given. *See, e.g., Jurek v. Estelle,* 623 F.2d 929 (5th Cir. 1980) (en banc); 623 F.2d at 931 (opinion of Garza, J.); 623 F.2d at 956–62 (opinion of Brown, J.); and cases cited therein. *See also, Jurek v. Estelle,* 450 U.S. 1014, 1015–21, 101 S.Ct. 1724, 1725–28, 68 L.Ed.2d 214 (1981) (Rehnquist, J., dissenting from the denial of certiorari).

4. *Compare Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973) (whether a consent to search was voluntarily given is a question of fact to be determined from all of the circumstances) *with Davis v. North Carolina,* 384 U.S. 737, 741–42, 86 S.Ct. 1761, 1764–65, 16 L.Ed.2d 895 (1966) (whether a confession was voluntarily given is an ultimate issue—appellate courts must make an independent determination after examination of the entire record. *See also, Jurek v. Estelle,* 623 F.2d 929, 956–62 (5th Cir. 1980) (en banc) (Brown, J., concurring in part and dissenting in part).

judge. Counsel for Castleberry attempted to make much of the fact that Castleberry visited a minister. As the district court noted, however, Castleberry's visit to a minister was not, of itself, objectionable. Rather, the district judge based his holding on the "totality of the circumstances." The totality of the circumstances included not only the conduct of the Tulsa police, but also Castleberry's mental capabilities. What impact the conduct of the police had on Castleberry is, to us, a question of fact. Stated slightly differently, whether the conduct of the police was of such nature as to cause a person with Castleberry's characteristics to confess when he would not have done so otherwise is a question of fact.

28 U.S.C. § 2254(d) (1976) provides that where certain conditions are met, a factual determination made by a state court of competent jurisdiction "shall be presumed to be correct." *See LaVallee v. Rose*, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973) (per curiam). The only possible exception to that general rule which might have present application is exception (8), which allows a federal court to overturn a state court's factual determination if the federal court concludes that "such factual determination is not fairly supported by the record." *See Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). We are of the view, however, that the present record does fairly support the determination of the state court. In such circumstance, a federal court should accept the state court's determination.

Federal cases overturning state convictions on the basis of an involuntary confession are generally based on either obvious misconduct on the part of the police, or, unusual susceptibility on the part of the accused, or both. For example, in *Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960), the accused had been discharged from the Armed Forces because of permanent mental disability, and his confession came after eight or nine hours of sustained interrogation in a small room which was at times filled with police officers. And, in *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), the defendant was a 33-year-old illiterate mental defective who was questioned intermittently for some three days before he made a confession, without the benefit of counsel, although he had repeatedly requested such. Similarly, in *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), the defendant's statements were made while he was in the intensive care unit of a hospital, where he was "encumbered by tubes, needles, and a breathing apparatus," to a detective who persisted in questioning even though the defendant wanted his lawyer present, with a nurse standing by suggesting that it would be best for the defendant to talk to the detective. In our view, the facts of such cases are radically different from those in the instant case.

In sum, the issue of whether Castleberry's confession was voluntary, or involuntary, was one of fact, and the state court's determination of that matter, after full hearing, is fairly supported by the record.

Judgment reversed, and cause remanded with direction that judgment be entered for the defendants, and that the writ be discharged.